989 A.2d 11 (2010)
M.A.T., Appellant
v.
G.S.T., Appellee.
No. 1517 MDA 2008.
Superior Court of Pennsylvania.
Argued September 24, 2009.
Filed January 21, 2010.
*12 Kathleen Misturak-Gingrich, Harrisburg, for appellant.
Darren J. Holst, Harrisburg, for appellee.
BEFORE: FORD ELLIOTT, P.J., MUSMANNO, ORIE MELVIN,[*] BENDER, BOWES, PANELLA, DONOHUE, SHOGAN and ALLEN, JJ.
OPINION BY DONOHUE, J.:
¶ 1 Appellant M.A.T. ("Mother") appeals the trial court's order dated August 11, 2008 denying her petition for modification of a custody order granting Appellee G.S.T. ("Father") primary physical custody of their daughter K.J.T. ("Daughter"). The trial court based its decision on (1) its application of an evidentiary presumption against a homosexual parent, see, e.g., Constant A. v. Paul C.A., 344 Pa.Super. 49, 496 A.2d 1 (1985); and (2) rejection of uncontroverted expert testimony recommending shared custody. For the reasons set forth herein, we reverse the trial court's order and grant Mother's petition for modification of the custody order. In doing so, we overrule the holding and reasoning in Constant. We further rule that the trial court in this case abused its discretion in rejecting the recommendations of the jointly retained custody evaluator *13 and basing its decision to award primary physical custody to Father upon the trial court's personal opinion that shared custody is seldom (if ever) in the best interests of school-age children. Accordingly, we vacate the trial court's order dated August 11, 2008 and remand for entry of an order consistent with this Opinion.
¶ 2 Mother and Father were married in September 1993. After unsuccessful attempts at bearing their own children, they adopted Daughter as an infant in 2004. Around February 1, 2006, Mother advised Father of her involvement since October 2004 in a same sex relationship with a friend and confidant. In October 2006, Mother filed complaints in divorce and for shared custody of Daughter, and Father filed an answer and new matter seeking primary physical custody of Daughter.[1]
¶ 3 In anticipation of the upcoming custody hearings, Mother and Father jointly agreed to retain Deborah L. Salem ("Salem"), of Interworks in Harrisburg, to conduct a custody evaluation and proffer an opinion regarding Daughter's best interests in connection with the custody decision. Salem issued her report in advance of the hearings, recommending a "3-2-2-3" arrangement in which the parents shared custody on an alternating schedule every two to three days. Salem acknowledged that it would take Daughter approximately twelve to eighteen months to adjust to her parents' separation.
¶ 4 On April 3, 2007 and May 17, 2007, the trial court held evidentiary hearings on the custody of Daughter. In addition to Mother, Father, and Salem, numerous family members and work associates testified on behalf of the parties.[2] On May 30, 2007, the trial court issued its initial custody order, in which it ordered the implementation of Salem's proposed "3-2-2-3" schedule for an eighteen-month "transition period." After this transition period, the trial court awarded primary physical custody of Daughter to Father, with Mother being granted visitation every other weekend, alternating holidays, and six weeks during the summer. Neither Mother nor Father appealed the May 30, 2007 order.
¶ 5 On March 3, 2008, Mother filed a petition for modification of the May 30, 2007 custody order. Father filed an answer in response and the trial court scheduled an evidentiary hearing for August 6, 2008. At this hearing, Mother called Salem, who had prepared an updated custody evaluation, to testify. Salem reaffirmed her opinion that a shared physical custody arrangement on a "3-2-2-3" basis was in Daughter's best interests.[3] Father testified *14 in his own behalf, stating that in his opinion Daughter would benefit from his assumption of primary physical custody (per the May 30, 2007 order, set to begin on September 1, 2008). At the conclusion of this hearing, the trial court offered the following:
While there have been some minor changes in circumstances regarding [Mother's] residence and her relationship with this other person, it continues to be my abiding belief that the best interests of a school-aged child are served in a primary physical custodial relationship. I respect [Salem]. I respect her credentials. But I respectfully disagree with her ultimate conclusions that a shared custodial arrangement is in this child's best interest. And it was for that reason that I made a primary award of [Daughter] in my order. The only reason that we had a shared custodial arrangement since that order up until the September 1st date was to allow [Daughter] to transition through a separation of her parents. . . . I'm not going to expound at any great length on why I think primary physical custody is to be preferred. It's based upon my many years on the bench, my own personal experience as a parent, a grandparent, a foster parent. As I said, I have differences of opinion with [Salem]. And we'll just leave it at that. . . . So, again, while [Salem] thinks that might be disruptive, I don't think it's any more disruptive than this hacked-up schedule where she's two days here, two days there, three days here, and then the next week the days are reversed. Otherwise, the old expression, if it's Monday, I must be in Paris, something like that. Well, you know what I am talking about.
N.T., 8/6/08, at 179-81. On August 11, 2008, the trial court denied Mother's petition for modification and issued a new custody order essentially restating the terms of the May 30, 2007 order, including the grant of primary physical custody to Father effective September 1, 2008.
¶ 6 Mother filed a timely notice of appeal from the trial court's August 11, 2008 order.[4] In its written opinion pursuant to Pa.R.A.P. 1925(a), the trial court found that the evidence presented at the evidentiary hearings established that "both Mother and Father were loving, caring parents and each were quite capable of assuming the role as primary physical custodian." Trial Court Opinion, 10/23/08, at 6. The trial court defended its grant of primary physical custody to Father on two grounds. First, the trial court found that Mother had failed to meet her burden of proof to establish her entitlement to custody. In this regard, the trial court cited to prior decisions of this Court, including Constant and Barron v. Barron, 406 Pa.Super. 401, 594 A.2d 682 (1991), which held that in custody determinations "[t]he burden is on the parent who is involved in a gay relationship to prove that there will be no adverse effect on the child if exposed to the relationship." Id. at 687. The trial court indicated that "Mother never offered testimony to the effect that her homosexual relationship would not have an adverse effect on [Daughter]," and therefore concluded that "when weighing [Daughter's] best interests between the two households we believe those interests are better served by placing her in a traditional heterosexual environment." Trial Court Opinion, 10/23/08, at 14, 15.
*15 ¶ 7 Second, the trial court decided to disregard Salem's recommendation that continuing the "3-2-2-3" schedule would be in Daughter's best interests. The trial court found as follows:
We have carefully considered the testimony and report of [Salem] the social worker who was retained to do the evaluation in this case. We strongly disagree that [Daughter's] best interest would be served by bouncing her between the households on a "3-2-2-3" schedule. Once a child is enrolled in school she needs a place which she can call home, a place which provides constancy in routine study timestelevision times meal timesbedtimes. She needs constancy in matters of discipline, chores, personal hygiene. She does not need to spend endless hours being transported between households. It is our abiding opinion that [Daughter's] best opportunity to thrive socially and academically will be far better served by living, at least during the school week, in a single place.
Id. at 18. The trial court did not cite to any evidence of record in support of this determination.
¶ 8 Mother raises three issues for our consideration in this appeal.
(1) Whether the trial court erred in awarding primary physical custody to Father effective September 1, 2008 and whether such award was the result of bias, prejudice and/or ill will towards Mother, who had had a same-sex extra-marital relationship, which she had terminated prior to the August 6, 2008 Hearing.
(2) Whether the trial court upset the status quo of shared legal and physical custody without good cause and further erred by substituting its own prejudice and bias against shared physical custody of school age children, despite the uncontroverted and unqualified record evidence of the expert custody evaluator that this minor child was thriving in the current shared physical custody arrangement and any decrease in child's custody time with either parent, but especially Mother, would cause significant psychological and emotional harm to the child.
(3) Whether the trial court erred by (1) misstating and/or misapplying the law respecting custody by requiring a "substantial change in circumstances" to warrant modification of its May 31, 2007 Order and by disregarding the requirements of 23 Pa. C.S.A. 5303(a)(1) and (2) by failing to consider the preference of this minor child stating, "I consider any preference by the child to be absolutely irrelevant" and by failing to consider ample record evidence that Mother is the better co-parent.
Appellant's Brief at 7.[5]
¶ 9 With respect to Mother's first issue on appeal, Mother argues that the trial court erred in applying an evidentiary presumption requiring a parent involved in a same sex relationship to prove that exposure to said relationship will not have an adverse effect on the child. The law as enunciated by this court in this area is conflicting. In 1985, a panel of this Court decided Constant A. v. Paul C.A., 344 Pa.Super. 49, 496 A.2d 1 (1985). In Constant, the mother, living openly in a lesbian relationship, sought an expansion of her shared visitation rights to her two children. The trial court found that the mother's lesbian relationship "shows her moral deficiency," but concluded that since there *16 was no proof that the mother's homosexuality "constitutes a grave threat to the children," it decided that her sexual orientation was "only to limit visitation and not to completely deny it." Id. at 3. As a result, the trial court denied the mother's petition for expanded visitation rights.
¶ 10 On appeal, a three-member panel of this Court, by a vote of 2-1, affirmed the trial court's decision. The majority rejected the mother's contention that sexual orientation should not be a consideration in a custody determination, stating that while "homosexuality per se is not a basis for denying visitation or partial custody to a parent, we do not consider it irrelevant." Id. at 9-10. The majority described as "a fallacy" the notion that a homosexual relationship could ever be the equal of the traditional family as a suitable family arrangement, and indicated that it was "inconceivable" that a child could be exposed to a homosexual relationship "and not suffer some emotional disturbance, perhaps severe." Id. at 8 (emphasis in original).
¶ 11 As a result, the majority in Constant established an evidentiary presumption in child custody cases against the homosexual parent: "[T]here are sufficient social, moral and legal distinctions between the traditional heterosexual family relationship and illicit homosexual relationship to raise the presumption of regularity in favor of the licit, when established, shifting to the illicit, the burden of disproving detriment to the children." Id. at 10. According to the majority, once the heterosexual parent establishes a homosexual relationship by the other parent, the homosexual parent has the burden of proving that exposure to the homosexual relationship would have no adverse effect on the children. Id. at 7.
¶ 12 Two subsequent panels of this Court applied Constant's presumption in favor of a traditional heterosexual relationship, including the evidentiary requirement that the homosexual parent has the burden to prove that the homosexual relationship has no adverse effect on a child if exposed to that relationship. See Pascarella v. Pascarella, 355 Pa.Super. 5, 512 A.2d 715 (1986) (appeal of order granting limited partial custody of children by divorced father involved in openly homosexual relationship); Barron v. Barron, 406 Pa.Super. 401, 594 A.2d 682 (1991) (appeal of custody order by mother living with female partner).
¶ 13 In Blew v. Verta, 420 Pa.Super. 528, 617 A.2d 31 (1992), however, a panel of this Court ignored the Constant evidentiary presumption against the homosexual parent. The panel instead concluded that "of primary importance to the child's well-being is the child's full and realistic knowledge of his parents, except where it can be shown that exposure to the parent is harmful to the child." Id. at 35. In Blew, the trial court found that the expert testimony established that mother's sexual orientation had no adverse affect on the child, but nevertheless restricted the mother's visitation of the child based upon its understanding of the requirements of Constant. Id. at 32. This Court reversed, concluding that in the absence of any evidence that mother's homosexuality had harmed the child, the trial court had abused its discretion in restricting the mother's visitation rights. Id. at 36. Referencing earlier cases from this Court involving inter-racial relationships, the panel in Blew further indicated that the hostile reactions of others in the community to homosexuality should not be considered in making custody determinations: "A court may not assume that because children will encounter prejudice in one parent's custody, their best interests will be served by giving them to the other parent. If the children are taunted and hurt because they *17 live with a black man, with love and help they may surmount their hurt and grow up strong and decentthe sort of children any parent would be proud of . . ." Id. at 35 (quoting In re Custody of Temos, 304 Pa.Super. 82, 450 A.2d 111, 120 (1982)).
¶ 14 Resolving this conflict in prior panel decisions of this Court, we overrule both the holding and the reasoning in Constant and its progeny (including Pascarella and Barron),[6] and conclude that a homosexual parent bears no special evidentiary presumption in a child custody case. Constant's evidentiary presumption against the parent involved in a same sex relationship is fundamentally contrary to our Supreme Court's admonition that presumptions should not be relied upon when deciding child custody cases between the parents. In Spriggs v. Carson, 470 Pa. 290, 368 A.2d 635 (1977), our Supreme Court indicated that "courts should inquire into the circumstances and relationships of all the parties involved and reach a determination based solely upon the facts of the case then before the Court." Id. at 300, 368 A.2d at 640 ("Courts should be wary of deciding matters as sensitive as questions of custody by the invocation of `presumptions.'"). Similarly, in Ellerbe v. Hooks, 490 Pa. 363, 416 A.2d 512 (1980), the Supreme Court held that in custody cases between parents,[7] "the burden of proof is shared equally by the contestants and the child's well-being is the focus of consideration." Id. at 366, 416 A.2d at 513.
¶ 15 Relying upon, inter alia, the Supreme Court's decisions in Spriggs and Ellerbe, this Court summarized the law with regard to evidentiary presumptions in child custody cases between parents as follows:
But courts may no longer reason by presumption in child custody cases. Not only has the tender years presumption been explicitly repudiated, but so have all other presumptions. In a custody dispute between parents, no one has the burden of proof; no presumption may be resorted to; instead, the court must determine according to the evidence in the particular case before it what will serve the children's best interests.
Temos, 450 A.2d at 121-22 (citations omitted).
¶ 16 Accordingly, in establishing an evidentiary presumption against a parent involved in a homosexual relationship, the three-judge panel in Constant violated the *18 basic precept that the sole focus of a child custody proceeding should be on the best interests of the childwithout either parent bearing the burden of proof.[8] Moreover, Constant's evidentiary presumption is based upon unsupported preconceptions and prejudicesincluding that the sexual orientation of a parent will have an adverse effect on the child, and that the traditional heterosexual household is superior to that of the household of a parent involved in a same sex relationship. Such preconceptions and prejudices have no proper place in child custody cases, where the decision should be based exclusively upon a determination of the best interests of the child given the evidence presented to the trial court.
¶ 17 In the case sub judice, the trial court admitted that Mother's lesbian extramarital affair played a role in the decision to award primary custody to Father. Trial Court Opinion, 10/23/08, at 15. The trial court further confirmed that, pursuant to the evidentiary burdens in Constant, Mother had failed to demonstrate that her homosexual relationship would not have an adverse effect on her child. The trial court quoted extensively from Constant in support of its ruling that the child's interests were "better served" by placing her in a traditional heterosexual environment. Trial Court Opinion, 10/23/08, at 15. Based upon our decision here, the trial court's reliance upon Constant was error and its order dated August 11, 2008 must be reversed.
¶ 18 Turning to Mother's second issue on appeal, she argues that the trial court erred in failing to consider Salem's testimony regarding the benefits to Daughter of a "3-2-2-3" custody arrangement, and in substituting its own biases against shared physical custody in reaching its decision to award primary physical custody to Father. Appellant's Brief at 38, 43. Based upon our review of the record on appeal, we agree with Mother.
¶ 19 Our standard of review of an appellate court in connection with a child custody order has been aptly described as follows:
The appellate court's scope of review in custody cases is of the broadest type. This broad power is limited to the extent that an appellate court may not nullify the fact finding function of the hearing judge. We are empowered to form our own independent deductions and inferences from the facts found by the hearing judge, but may only interfere with the decisions of the hearing court where there has been a gross abuse of discretion. We must determine whether the trial court's factual findings support the trial court's factual conclusions, but we may not disturb these conclusions unless they are unreasonable in light of the court's factual findings.
Our appellate function is to make an independent judgment, based on the testimony and evidence before us, that is in the best interest of the child. We must make an independent examination of the record and make an order on the merits of the case which is right, just and will serve the best interest of the child. After we take full account of the hearing judge's reasoning, still, we must be easy in our own conscience that the judge's award will serve the best interest of the child, or children, in question.
Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating *19 the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.
Murphey v. Hatala, 350 Pa.Super. 433, 504 A.2d 917, 920 (1986) (citations and quotation marks omitted), appeal denied, 516 Pa. 634, 533 A.2d 93 (1987); see also McMillen v. McMillen, 529 Pa. 198, 202, 602 A.2d 845, 846-47 (1992); King v. King, 889 A.2d 630, 632 (Pa.Super.2005).[9]
¶ 20 Salem testified that she conducted a custody evaluation over a three month period. She opined that "[w]ith extreme certainty, I believe that [Daughter] should be shared by the parents." N.T., 5/17/07, at 392. She based this opinion on her observations that Daughter was attached to both parents in "very palpable, very clear ways," and that "she would suffer from significant absence from one or the other of them." Id. at 393. In recommending a "3-2-2-3" custody schedule, Salem said that it was a "pretty standard schedule for a child her age," that would provide each parent with an equal amount of time spent with Daughter. Id. at 394-95. Salem further indicated that "[Daughter] is bright, she's verbal, she's willful, she has an equal opportunity to resist as she does to comply. She can navigate her environment." Id. at 393. For these reasons, Salem opined that since Daughter is "skilled at letting you know what works and what doesn't work," if the "3-2-2-3" schedule did not work for her, she would not hesitate to let her parents know. Id. at 395.
¶ 21 The trial court was under no obligation to delegate its decision-making authority to Salem. See, e.g., K.W.B. v. E.A.B., 698 A.2d 609, 613 (1997). It is an abuse of discretion, however, for a trial court to dismiss "as unpersuasive, and to totally discount, uncontradicted expert testimony." Murphey, 504 A.2d at 922; see *20 also Rinehimer v. Rinehimer, 336 Pa.Super. 446, 485 A.2d 1166, 1169 (1984) (while not required to accept their conclusions, "[t]he lower court was obligated to consider the testimony of the two experts[.]"); Straub v. Tyahla, 274 Pa.Super. 411, 418 A.2d 472, 476 (1980) ("[W]e conclude that the lower court abused its discretion in totally discounting as unpersuasive the expert opinion testimony of appellant's testifying psychiatrist."). Accordingly, while a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record. See Nomland v. Nomland, 813 A.2d 850, 854 (Pa.Super.2002) ("To say that a court cannot discount uncontradicted evidence, however, is merely to rephrase the requirement that a child custody court's conclusion have competent evidence to support it. So long as the trial court's conclusions are founded in the record, the lower court was not obligated to accept the conclusions of the experts.") (citations and quotation marks omitted).
¶ 22 In this case, the trial court disregarded Salem's recommendation for shared custody on a "3-2-2-3" schedule, instead awarding primary physical custody of Daughter to Father. Upon appellate review of the record on appeal, we conclude that the trial court did so without any basis in competent record evidence. To the contrary, in remarks from the bench following the August 6, 2008 evidentiary hearing, and again in its Rule 1925(a) written opinion, the trial court made clear that its refusal to follow Salem's recommendation regarding the "3-2-2-3" custody schedule was based upon the trial court's personal view that shared custody is seldom (if ever) in the best interests of a school-age child. From the bench, the trial court remarked that:
I'm not going to expound at any great length on why I think primary physical custody is to be preferred. It's based upon my many years on the bench, my own personal experience as a parent, a grandparent, a foster parent. As I said, I have differences of opinion with [Salem]. And we'll just leave it at that.
N.T., 8/6/08, at 180 (emphasis added).
¶ 23 Likewise, in the Rule 1925(a) written opinion, the trial court stated that for a school-age child, routine (in study, television, meals, and bedtimes) and constancy (in discipline, chores, and personal hygiene) in a single home are paramount to other concerns. Trial Court Opinion, 10/23/08, at 18. The trial court did not cite to any evidence of record to support these "findings", however, and there is no indication that these views were based upon any evidence relating to Daughter's specific situation.[10] To the contrary, by all indications the trial court simply prefers one parent to have primary custody in a single home for school-age children, rather than an award of shared custody in two homes.
¶ 24 The trial court's decision to discount Salem's uncontradicted expert testimony regarding Daughter's best interests, including in particular the recommendation for the "3-2-2-3" schedule giving the parents equal time with her, was an abuse of discretion. While the trial court was not required as a matter of law to adopt Salem's recommendations, it was also not entitled to disregard them and to instead rely on personal views of Daughter's best *21 interests not supported by the evidence of record. Shared custody is a statutorily recognized form of relief in custody cases, see 23 Pa.C.S.A. § 5304, and when a party to a custody proceeding requests such relief (as Mother did here), the trial court may not reject the request based upon his/her personal distaste for the arrangement. Because the trial court did so in this case, we cannot affirm the award of primary physical custody to Father.
¶ 25 In most cases in which we conclude that an abuse of discretion has occurred, the case is remanded to the trial court for further consideration. Where, however, the record is sufficiently developed (as is the case here), we may substitute our judgment for that of the trial court and decide the case on the merits. See Wiseman v. Wall, 718 A.2d 844, 851 n. 3 (Pa.Super.1998); see also In re Michael T.L. v. Marilyn J.L., 363 Pa.Super. 42, 525 A.2d 414, 421 (1987) (having found that the award of custody to father was unsupported by the facts of record, this Court considered the best interests of the child and granted custody to mother); Temos, 450 A.2d at 119 (the same, reversing trial court order and awarding custody to mother based upon facts of record); McAnallen v. McAnallen, 300 Pa.Super. 406, 446 A.2d 918, 923 (1982) (the same, awarding custody to mother where evidence indicated that best interests of child would be served with award of custody to mother). In this regard, we must "make an independent examination of the record and make an order on the merits of the case which is right, just and will serve the best interests of the child." See, e.g., Murphey, 504 A.2d at 920.[11]
¶ 26 There is no dispute that both Mother and Father are fit, loving, and caring parents who are each fully capable of caring for Daughter. Trial Court Opinion, 10/23/08, at 6; Appellee's Brief at 3; N.T., 8/6/08, at 134. From the date of the trial court's initial custody order on May 30, 2007, and continuing until entry of the second custody order on August 11, 2008, Mother and Father shared custody of Daughter on the "3-2-2-3" schedule recommended by Salem. At the evidentiary hearing on August 6, 2008, the uncontroverted testimony established that after a short period of adjustment, Daughter had done "extraordinarily well" in making the transition to the new schedule, id. at 25, and that she showed no signs of "suffering or over-coping" with the arrangement. Id. at 48-49. The testimony also established that Daughter had displayed no problems at school and was in fact "thriving in the classroom." Id. at 23. Salem testified that in her professional opinion, with a reasonable degree of professional certainty, that the "3-2-2-3" schedule should be retained. Id. at 31. In fact, Salem testified "to a clinical certainty" that any reduction in the amount of Mother's time with Daughter would be harmful to Daughter. Id. at 33. While disagreeing with Salem's recommendation that the "3-2-2-3" schedule be retained, Father did not offer any examples of problems or issues with its implementation during the prior fifteen months.[12]
*22 ¶ 27 Four factors must be considered in determining whether to grant a parent's request for shared legal custody: (1) whether both parents are fit, capable of making reasonable child rearing decisions, and willing and able to provide love and care for their children; (2) whether both parents evidence a continuing desire for active involvement in the child's life; (3) whether the child recognizes both parents as a source of security and love; and (4) whether a minimal degree of cooperation between the parents is possible. Yates v. Yates, 963 A.2d 535, 542 (Pa.Super.2008) (citing Wiseman, 718 A.2d at 848). Based upon our review of the record on appeal, the evidence amply supports a finding that all four of these factors are satisfied in this case,[13] and as a result an award of shared legal custody of Daughter by Mother and Father is appropriate here. Moreover, based upon the evidence presented at the August 6, 2008 evidentiary hearing regarding the successful utilization of the "3-2-2-3" custody schedule over the prior fifteen month period (between May 2007 and August 2008), including Daughter's positive transition in response thereto, we further find that this schedule should be re-instituted.[14]
¶ 28 The trial court's order dated August 11, 2008 is vacated; this case is remanded for entry of a custody order consistent with this Opinion. Jurisdiction is relinquished.
¶ 29 SHOGAN, J. files a Concurring and Dissenting Opinion in which ALLEN, J. joins.
CONCURRING AND DISSENTING OPINION BY SHOGAN, J.
¶ 1 I agree with my distinguished colleagues in the Majority regarding the proper legal standards to be applied in this custody case. However, I am constrained to dissent with regard to the disposition of this matter.
¶ 2 As discussed by the Majority, the trial court erred in several respects. In granting primary physical custody to Father, the trial court relied on its "abiding belief that the best interests of a school-aged child are served in a primary physical custodial relationship." N.T., 8/6/08, at 179; 180 (emphasis added). However, the proper standard in custody cases is the best interests of the child, which is decided on a case-by-case basis and considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual wellbeing. Each case is to be decided on its own particular facts. N.H.M. v. P.O.T., 947 A.2d 1268 (Pa.Super.2008) (citations omitted).
¶ 3 Additionally, the trial court stated that the purpose of the August 6, 2008 hearing "was to determine whether or not there was any substantial change in the circumstances of the parties that would warrant a modification to the order that [was] previously entered in this case." N.T., 8/6/08, at 178-179. However, in 1988 the Pennsylvania Supreme Court rejected the "substantial change in circumstances" standard for modification of a custody order as contrary to the statutory provisions of the Custody and Grandparents' Visitation Act, 23 Pa.C.S.A. §§ 5301-5366. See Karis v. Karis, 518 Pa. 601, 607-608, 544 A.2d 1328, 1332 (1988) (holding that a petition *23 for modification of a custody order "requires the court to inquire into the best interest of the child regardless of whether a `substantial' change in circumstances has been shown."). Consequently, it appears that Constant A. v. Paul C.A., 344 Pa.Super. 49, 496 A.2d 1 (1985), which expressly relied on the improper standard, was overruled by our Supreme Court sub silentio in Karis.
¶ 4 Moreover, relying on Constant, the trial court appeared to impose a burden on Mother to prove that her homosexual relationship would not harm her daughter. However, it is well established that presumptions are generally not appropriate in custody proceedings. Accord Blew v. Verta, 420 Pa.Super. 528, 617 A.2d 31 (1992) (concluding that, in the absence of any evidence that mother's homosexuality had harmed the child, restricting mother's visitation rights was an abuse of discretion); In re Custody of Temos, 304 Pa.Super. 82, 450 A.2d 111 (1982) (rejecting presumption in favor of white parent because children will encounter prejudice in black parent's custody).
¶ 5 As for the disposition of this matter, almost seventeen months have passed since the August 11, 2008 order was entered, and, presumably, the child has entered elementary school. That is a significant amount of time in a young child's life. With the guidance provided by our decision in this matter, the trial court is in the best position to evaluate whether a modification of custody is in the best interests of the child. Therefore, rather than substitute our judgment for that of the trial court, I would vacate the custody order and remand for the trial court's consideration of Mother's request for modification using the proper legal standards.
NOTES
[*] Judge Orie Melvin did not participate in the consideration or decision of this case.
[1] Despite these filings, Mother and Father continued to live together with Daughter in the marital home until July 2008, at which time Mother relocated to a new residence about five minutes away.
[2] Mother and Father both work in law enforcement. Mother is a Lieutenant in the Pennsylvania State Police. Notes of Testimony ("N.T."), 4/3/07, at 39. Father is a Sergeant with the Lower Paxton Township Police Department. Id. at 4. During the hearing, the trial court referred to Mother by her first name while referring to Father as "Sergeant" (correcting itself after initially referring to him as "Mr. ___"). See, e.g., N.T., 8/6/08, at 180-81.

The Pennsylvania Supreme Court is dedicated to eradicating gender discrimination in our court system. Its creation of the Interbranch Commission for Gender, Racial and Ethnic Fairness is committed to that goal. Given all of the hard work in the uphill battle against gender discrimination, we would be remiss if we did not remind the trial court that Mother and Father are entitled to equal deference to their respective ranks when being addressed by the trial court.
[3] Salem also opined that if the trial court were to choose a primary physical custodian for Daughter (rather than her recommendation of shared custody), she would select Mother.
[4] Mother filed applications for supersedeas to delay implementation of Father's primary physical custody during the pendency of this appeal with both the trial court and with this Court. These applications were denied.
[5] We have reordered Mother's issues on appeal for purposes of review.
[6] See, e.g., Commonwealth v. Morris, 958 A.2d 569, 581 n. 2 (Pa.Super.2008) (en banc) ("It is well-settled that this Court, sitting en banc, may overrule the decision of a three-judge panel of this Court."); Commonwealth v. Jacobs, 900 A.2d 368, 377 n. 9 (Pa.Super.2006) (en banc) (overruling the decision of a three-judge panel); Commonwealth v. Smith, 772 A.2d 75, 78 (Pa.Super.2001) (en banc) ("[T]his Court sitting en banc may overrule the decision of a three-judge panel of this Court"), reversed on other grounds sub nom. Commonwealth v. Gatling, 570 Pa. 34, 807 A.2d 890 (2002).
[7] In Ellerbe, the Supreme Court recognized a presumption in favor of the parents in child custody cases between the parents and third parties (e.g., grandparents). In so doing, the Supreme Court drew a clear distinction between custody cases involving the two parents (where no presumptions exist), and those between parent(s) and the state (where the state bears the burden of proof of delinquency or dependency). Id. With these two parameters established, the Supreme Court recognized a middle ground for cases between parents and third parties, in which the parents have a prima facie right to custody which may be forfeited only if "convincing reasons" appear that demonstrate the child's best interest will be served through custody by the third party. Id. at 366, 416 A.2d at 514. See also Hiller v. Fausey, 588 Pa. 342, 364, 904 A.2d 875, 890 (2006) (reaffirming the Ellerbe presumption in favor of parents over third parties).
[8] To the extent that our decision in Blew may be understood to create contrary evidentiary presumptions in favor of either parent, we similarly reject any such interpretations, for the same reasons.
[9] With respect to sub-section (1) of Mother's third issue on appeal, she contends that the trial court misapplied the law by requiring her to prove "substantial change in circumstances" before modifying the previous custody order. The trial court's written opinion does not reflect that it applied this standard in reaching its decision, although at the conclusion of the August 6, 2008 evidentiary hearing the trial court stated: "The purpose of this Hearing, as I viewed it from the outset was to determine whether or not there was a substantial change in the circumstances of the parties that would warrant a modification to the Order that I previously entered in this case." N.T., 8/6/08, at 178-79.

To the extent that the trial court applied a "substantial change in circumstances" standard in this case, it erred in so doing. Section 5310 of the Domestic Relations Act provides that (with certain exceptions not applicable here) a child custody order may be "modified at any time to an order of shared custody in accordance with this subchapter." 23 Pa.C.S.A. § 5310 (emphasis added). Furthermore, in McMillen v. McMillen, 529 Pa. 198, 602 A.2d 845 (1992), our Supreme Court held,
Our paramount concern in child custody cases is the best interest of the child. A custody order is modifiable without proof of a substantial change in circumstances where such a modification is in the best interests of the child. Therefore, . . . [a party] is not obliged to demonstrate a substantial change in circumstances in order to have the court entertain his motion to modify the existing custody order. To be successful, [a party] need only show that the modification is in [the child's] best interest.
Id. at 202, 602 A.2d at 846-47. Accordingly, the purpose of the hearing, and the focus of the trial court's attention, should have been directed solely at a determination of whether a modification of its prior custody order was in the best interests of the child.
[10] For example, the trial court found that Daughter "does not need to spend endless hours being transported between households." Id. The record in this case, however, reflects that Mother and Father live only about five minutes from each other. Petition for Modification of Custody Order, ¶ 1.
[11] We are mindful of the fact that Father has now had primary physical custody of Daughter since September 2008 and that reinstituting the "3-2-2-3" custody arrangement will involve a disruption in Daughter's schedule. However; if we instead remand to the trial court for further proceedings, we would be prolonging a custody arrangement created by legal error and compounding the effects of that arrangement on Daughter.
[12] Father testified that in his opinion Daughter's best interests would be served by his primary custody, and that in his view there would eventually be "cracks" in the "3-2-2-3" schedule. Id. at 134. Father did not, however, expound on what the nature of these prospective "cracks" might be.
[13] We also note that the trial court has made no findings of fact that would contradict this conclusion.
[14] In light of this disposition, subsection (2) of Mother's third issue on appeal (relating to Daughter's expressed preference regarding the custodial arrangement) is moot and we decline to address it herein.