J-A16009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| H.L.J. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R.G.J., JR. | : | |
| | : | |
| Appellant | : | No. 2014 MDA 2019 |

Appeal from the Order Entered November 27, 2019
In the Court of Common Pleas of Berks County
Civil Division at No(s): 16-16933

BEFORE: PANELLA, P.J., STABILE, J., and MUSMANNO, J.
MEMORANDUM BY PANELLA, P.J.:                **FILED JULY 28, 2020**

R.G.J., Jr. ("Father") appeals from the order, entered in the Court of Common Pleas of Berks County, granting H.L.J.'s ("Mother") petition to modify the existing order governing the custody of their daughter ("Child"). The trial court found that Child was suffering from moderate to severe alienation from Mother. As a result, the court modified the existing custody order to provide Mother with 90 days of sole physical custody of Child, with no contact with Father, who previously had primary physical custody of Child. After careful review, we affirm.

Mother and Father divorced in 2013. Since then, the parties have been involved in numerous custody hearings concerning physical custody of Child.

Following a custody hearing in 2017, the trial court granted shared legal custody of Child and awarded primary physical custody of Child to Father and partial physical custody to Mother. The court also ordered Mother to attend reunification therapy with Child to address some serious and outstanding issues between them.

Mother and Child participated in reunification therapy. However, after a period of time, Dr. Adrian Quinn, a licensed clinical psychologist, concluded that traditional reunification therapy was ineffective. According to Dr. Quinn, as sessions progressed, Child experienced anxiety to the point where she would no longer want to meet with Mother. Dr. Quinn opined that Child's rejection of Mother was influenced by Father. For that reason, he recommended that Mother and Child seek a higher level of care, where they can restart their relationship without interference from Father. Dr. Quinn referred Mother and Child to Linda Gottlieb, a therapist in New York.

Mother petitioned the trial court to modify the 2017 custody order so she could attend "intensive reunification therapy" with Gottlieb. The trial court held an evidentiary hearing on the petition. At the hearing, Gottlieb explained that her treatment program, known as "Turning Points for Families," is a 4

day therapeutic intervention designed to restore the damaged relationship between a child and the rejected parent.

Although the ultimate goal is for the child to have a meaningful relationship with both parents, Gottlieb requires the rejected parent to have temporary sole custody of the child. Then, upon completion of the 4 day program, the child is not permitted to contact the favored parent for at least 90 days. However, if the favored parent attends therapy on their own and supports reunification with the rejected parent, the no-contact period may be lifted sooner than 90 days.

Following Gottlieb's testimony, Mother sought to have Gottlieb qualified as an expert in reunification therapy, specializing in parental alienation. Father objected, arguing that the therapist's methodology was not widely accepted, and in fact, might be actively opposed by a majority of her peers.

The court overruled Father's objection and ultimately entered an order requiring Child to participate in the therapist's intensive reunification therapy in New York, to be followed by 90 days of no contact with Father. The court order also provides that physical custody of the child will not be returned to Father unless Father supports Mother's relationship with daughter.

Father filed a notice of appeal and a concise statement of errors complained of on appeal. He also filed a stay of the court's order, which the court denied. Father then filed an emergency application in this Court seeking the same relief. This Court granted a temporary stay, pending the disposition of Father's appeal.

Thereafter, the trial court requested this Court remand the matter for an additional hearing without specifying any reasons for its request. Father opposed the trial court's request, alleging irregularities following the entry of the order under appeal. Specifically, he noted the court's attempt to enforce the order prior to this Court's order staying proceedings. Upon review, we denied the trial court's request to remand. This appeal is now properly before us.

On appeal, Father raises the following issues:

1. [Whether] a trial court [may] base conclusions and directives for children in a custody matter solely on novel scientific evidence without a factual basis that the principles and methodology the scientist employed or employs has gained general acceptance in the relevant medical community?

2. [Whether] a trial court [may] certify an expert in a custody matter without a factual basis that the principles and methodology the scientist employed or employs has gained general acceptance in the relevant medical community?

3. [Whether] a trial court [may] issue an order deferring decisions of physical custody to the sole discretion of an expert?

4. [Whether] a trial court [may] make indefinite changes to a custody order without an analysis of the best interests of the child standards?

5. [Whether] a trial court [may] issue a warrant pursuant to 23 P.A. C.S.[A.] § 5451 without a threat of imminent physical harm to a child or the threat that a child will be removed from the Commonwealth, without allowance, in the immediate future?

6. [Whether] a warrant pursuant to 23 P.A. C.S.[A.] § 5451 is wrongfully issued, must a court award counsel fees to the victim?

Appellant's Brief, at 7-8.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A.

§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (*quoting Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we stated the following regarding an abuse of discretion standard.

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation and citations omitted).

In his first two issues, Father alleges the trial court erred in qualifying Gottlieb as an expert witness in reunification therapy. *See id*., at 18. He argues that the novel scientific method she employs in reunification therapy is neither contained in the scientific literature nor generally accepted in the scientific community and, therefore, fails the *Frye* test.[1] *See id*., at 15-18. As such, Father contends Gottlieb's entire testimony should be disregarded. *See id*., at 18.

---

[1] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). Under *Frye*, novel scientific evidence must be generally accepted in the relevant scientific community before it will be admitted. *See Betz v. Pneumo Abex, LLC*, 44 A.3d 27, 30 (Pa. 2012). Pennsylvania Courts utilize the *Frye* test. *See id*.

When reviewing evidentiary rulings by the trial court, our standard of review is narrow. *See Potochnick v. Perry*, 861 A.2d 277, 282 (Pa. Super. 2004). The admission of expert testimony is within the discretion of the trial court and should not be disturbed on appeal unless the trial court abuses its discretion. *See Buttaccio v. American Premier Underwriters, Inc.*, 175 A.3d 311, 315 (Pa. Super. 2017).

Father's argument, while focused on *Frye*, necessarily impugns Gottlieb's status as an expert. We therefore first review the court's determination that Gottlieb was qualified to testify as an expert witness.

The admissibility of expert testimony is governed by Rule 702 of the Pennsylvania Rules of Evidence. Under Rule 702, an expert may testify if she has scientific, technical or other specialized knowledge, beyond that of a layperson, which will assist the trier of fact to understand the evidence or to determine a fact in issue. *See* Pa.R.E. 702.

It is well established in Pennsylvania that the standard for qualification of an expert witness is a liberal one. *See Miller v. Brass Rail Tavern*, 664 A.2d 525, 528 (Pa. 1995). The test to be applied when qualifying a witness "is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation." *Id*. The witness normally need only

possess more expertise than is otherwise within the ordinary range of training, knowledge, intelligence or experience. *See id*. If she does, she may testify and the weight of such testimony is for the trier of fact to determine in view of the expert's credentials. *See id*.

Regarding her credentials, Gottlieb testified that she earned a master's degree in clinical social work and a license in marriage and family therapy. *See* N.T., Hearing, 09/30/19, at 5-6. She has worked as a family therapist for nearly 25 years and has treated severe cases of parental alienation for most of it. *See id*., at 7-8. Gottlieb also testified to her years of experience as a continuing education instructor in parental alienation. *See id*., at 10-12. As such, we conclude the trial court did not abuse its discretion in qualifying Gottlieb as an expert witness since her education and experience gave her reasonable pretension to specialized knowledge in this area.

Next, we must determine whether the scientific evidence proffered by Gottlieb fails the *Frye* test, as Father contends. Under the *Frye* test, the proponent of expert scientific evidence bears the burden of proving that the expert's methodology is generally accepted in the relevant scientific community. *See Walsh v. BASF Corp.*, ____ A.3d ___, ___, 2020 WL 4135151, *7 (Pa. 2020). This does not mean, however, that the proponent of

such evidence must prove that the scientific community has also generally accepted the expert's conclusion. *See id*.

Mother, as the proponent of expert scientific evidence, has the burden of proving Gottlieb's methodology comports with the *Frye* test. *See id*.

The methodology Gottlieb employed in reaching her conclusion that Child suffers from parental alienation rests, in part, on her own expertise and analysis and research that is reasonably relied upon by experts specializing in parental alienation.

Parental alienation is a recognized specialty within the field of family therapy. *See* N.T., Hearing, 09/30/19, at 14. Alienation is the family dynamic through which one parent actively discredits the other parent to a child they share. *See id*., at 36. Symptoms of alienation manifest themselves in a number of ways. For instance, the child does not evince guilt or remorse about mistreating the rejected parent; the favored parent is perceived as good, while the rejected one is perceived as purely bad; and the child desires to cease all contact with the rejected parent. *See id*., at 45-46.

As a family therapist specializing in parental alienation, Gottlieb opined that Child suffers from a severe case of alienation as the result of Father's influence. *See id*., at 61. But, as Gottlieb found, there is no protective reason

for Child to reject Mother. *See id*., at 48. In fact, Gottlieb relied on the trial court's finding that Child is safe in the care and custody of Mother. *See id*., at 43-44. Yet, Child remains opposed to having a relationship with Mother. *See id*., at 47-48.

In cases of severe alienation, Gottlieb opined that traditional reunification therapy is an inadequate form of treatment. *See id*., at 16 and 23. In fact, Gottlieb referred to the growing body of literature that has found there is almost no benefit to treating severe cases of alienation with traditional reunification therapy. *See id*., at 15-16. Furthermore, Dr. Quinn also confirmed that a higher level of care is needed in cases of severe alienation like in the present case. *See id*., at

In the alternative, Gottlieb presented her program as the most appropriate form of treatment. *See id*., at 57. She testified that six professional organizations have authorized her to teach about diagnosis and treatment of alienated children. *See id*., at 11. She has authored a book on alienation and its treatment that has been praised by psychologists. *See id*.

Gottlieb testified that programs similar to hers exist and have been peer-reviewed. *See id*. As result, Gottlieb opined that there is a "scientific consensus" that supports her conclusions. *See id*., at 23.

Gottlieb believes Child will sustain serious psychological damage if intensive reunification therapy is not conducted in this case. *See id*., at 57. Alienation, as Gottlieb explained, is analogous to being in a cult. *See id*., at 41. A book published by the American Bar Association found that children suffering from alienation mimic the feelings and wishes of the alienating parent; ultimately, they are incapable of having their own thoughts and feelings on the subject of the rejected parent. *See id*. Without an alienating influence, Gottlieb stated that it is very unlikely any child would reject a parent because the literature shows that children do not reject parents on their own. *See id*., at 61-62.

In sum, Gottlieb concluded, based on her own assessment of the case and the consensus among experts in the community, that Child must participate in intensive reunification therapy with Mother to repair the damaged relationship between them. *See id*., at 59 and 61.

Based on the foregoing, we are satisfied that Gottlieb utilized a scientific methodology to develop her treatment plan. That scientific methodology is generally accepted in the community of specialists who diagnose and treat parental alienation. Any challenge to the propriety of her conclusions were appropriate matters for the trial court, sitting as fact-finder, to weigh.

Accordingly, we conclude, on this record, Gottlieb's methodology passes the *Frye* test, and that the trial court did not abuse its discretion in permitting her to provide expert testimony.

In his third issue, Father challenges the deference the trial court gave to Gottlieb on the issue of physical custody. *See* Appellant's Brief, at 19. Specifically, he argues that it was error for the trial court to issue a custody order where Gottlieb is to determine when Mother's temporary physical custody of Child should terminate. *See id*.

Trial courts have broad powers in custody matters to fashion remedies to meet the best interests of the child involved. *See In re M.L.*, 757 A.2d 849, 851 n.3 (Pa. 2000).

Here, the trial court fashioned a temporary custody order based on the testimony given by Gottlieb at the evidentiary hearing. There, she testified at length that, in order to repair a damaged relationship, such as the one between Mother and Child, the rejected parent must have temporary sole custody of the child. *See* N.T., Hearing, 09/30/19, at 37. Gottlieb also stated that there must be a no-contact period between the child and the favored parent for 90 days. *See id*. This is done to prevent the favored parent from

sabotaging the reunification between the child and the rejected parent. **See id**.

The trial court, as noted above, transferred physical custody of Child from Father to Mother and required that there be a no-contact period between Father and Child for 90 days. **See** Trial Court Order, 11/27/19, at 2. The order provided Gottlieb with the authority to implement her program to facilitate a reconciliation between Mother and Child. **See id**., at 3. The order also set forth that the no contact period would be extended indefinitely if Father failed to support Mother's relationship with Child. **See id**.

Although Father argues that the trial court erred in allowing Gottlieb to decide when temporary physical custody of Child should end, our review of the record shows that the court did no such thing. Rather, the court provided Gottlieb with the authority to shorten the sequestration period from 90 to 30 days under specific circumstances; namely, that Father attends therapy and genuinely supports Child's relationship with Mother. **See** N.T., Hearing, 09/30/19, at 31. In doing so, the court acted within the scope of its powers to advance the child's best interests. **See In re M.L.**, 757 A.2d at 851 n.3. As such, we find no abuse of discretion.

However, to the extent that Father argues that the trial court did not have authority, under this proceeding, to permanently modify the custody order, we agree. The trial court treated Mother's petition as one seeking special relief under Pa.R.Civ.P. 1915.13. Under Rule 1915.13, the court's authority is limited to temporary or interim awards of physical custody. Therefore, paragraph nine of the order under appeal, which provided for an indefinite extension of the no-contact order should Father fail to support Child's reunification with Mother, constitutes an abuse of the court's discretion.

Even so, we need not reverse or remand this matter. We merely strike paragraph nine, and limit the duration of the order to no more than 90 days after the no-contact period begins, though it may be earlier or even unnecessary if the parties agree that Father is supporting Child's reunification with Mother. [2] If Mother believes that Father has not supported reunification, she may file for a modification of physical custody.

---

[2] The 90 day no-contact period begins at the conclusion of Gottlieb's 4 day therapeutic intervention. *See* N.T., Hearing, 09/30/19, at 31.

Father alleges next that the trial court, prior to modifying the custody order, failed to conduct an analysis of the best interests of the child pursuant to 23 Pa.C.S.A. § 5328 (a). *See* Appellant's Brief, at 20.

As a preliminary matter, we note that the trial court stated in its 1925 (a) opinion that a best interests analysis pursuant to section 5328 (a) is not necessary here because Mother sought special relief to modify the existing custody order. *See* Trial Court Opinion, 2/6/20, at 5-6. We agree.

The Pennsylvania Rules of Civil Procedure provide trial courts with the authority to enter orders on an interim basis. Under Rule 1915.13, the court may on application or its own motion grant special relief where appropriate. *See* Pa.R.C.P. 1915.13. "The relief may include, but is not limited to, the award of temporary legal or physical custody[.]" *Id*. Any interim custody order issued pursuant to Rule 1915.13 does not necessitate a best interests analysis under section 5328 (a). *See C.H.L. v. W.D.L.*, 214 A.3d 1272, 1283 (Pa. Super.2019).

The certified record demonstrates that the trial court's temporary modification of the existing custody order constitutes special relief under Pa.R.C.P. 1915.13. Thus, the court was not required to conduct a best interests analysis prior to granting Mother's request for temporary physical

custody of Child. **See C.H.L.**, 214 A.3d at 1283. As such, Father's fourth issue merits no relief.

Father's remaining two issues on appeal challenge the legality of the warrants issued pursuant to 23 Pa.C.S.A. §5451. **See** Appellant's Brief, at 21-22. He argues that the trial court erred in issuing the warrants because the warrants failed to set forth that Child was likely to suffer imminent physical harm or be forcefully removed from the Commonwealth. **See id**., at 21.

After examining Father's 1925 (b) statement, we need not address his remaining two issues as he failed to preserve these claims for appellate review. Our Supreme Court has stated that "[a]ny issues not raised in a 1925(b) statement will be deemed waived." **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998). Therefore, since Father failed to include his remaining claims in his 1925 (b) statement, we find them waived.

Order affirmed as modified by this memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/28/2020