J-S17035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.N.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.L.J. | : | |
| | : | |
| Appellant | : | No. 227 MDA 2021 |

Appeal from the Order Entered January 19, 2021
In the Court of Common Pleas of Mifflin County Civil Division at No(s):
CP 44 CV 998 2019

BEFORE:  STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED: JULY 8, 2021**

D.L.J. (Father)[1] appeals from the order entered in the Court of Common Pleas of Mifflin County (trial court) continuing the award of primary physical custody of the parties' minor daughter, T.R.J. (Child, DOB 7/19) to A.N.B. (Mother), subject to Father's periods of partial physical custody.  The court denied Father's request for modification of the order to provide for equal physical custody.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We have used initials to denote the names of the parties to protect the identity of their minor child.  **See** Superior Court I.O.P. 424(A).

## I.

## A.

The parties were involved in a romantic relationship that ended shortly before Child was born. Mother works as a waitress and is in her mid-twenties. Father is retired from the military and is in his late forties. The parties live within ten minutes of each other. Father owns his home and Mother resides with her parents and younger sister.

On March 9, 2020, following a custody conference and upon agreement of the parties, the trial court entered an order granting the parties joint legal custody of Child. Mother was awarded primary physical custody, subject to Father's periods of partial custody consisting of every other weekend, one overnight visit during each week, one week of summer vacation and a shared holiday schedule. On September 2, 2020, the trial court amended the custody order by agreement of the parties to detail a comprehensive holiday schedule.

On September 28, 2020, Father filed a petition requesting modification of the custody order to a shared 50/50 physical custody arrangement.

## B.

At the time of the January 8, 2021 hearing, Child was seventeen months old and Father was forty-seven years old. Father explained that he is also a parent to twenty-two year old triplets. Father has a bachelor's degree in business management and he retired from the military in February 2014. Father has been diagnosed with post-traumatic stress disorder (PTSD) arising

from his involvement in a car accident in 2008. He recounted that immediately after he returned to Washington D.C. from Korea, he fell asleep at the wheel of his vehicle while driving home to Pennsylvania. He is on disability through Veterans Affairs (VA) because of his PTSD. Father testified that his PTSD does not have any impact on his parenting of Child.

Father explained that he and Mother participated in a custody evaluation when Child was two months old and he provided his medical history and records to the custody evaluator at that time.[2] Father averred that neither Mother nor the custody evaluator raised "any concerns whatsoever . . . as it relates to [his] PTSD diagnosis and [his] parenting abilities to [Child]." (N.T. Hearing, 1/08/21, at 35). He acknowledged that the recommendation of the custody evaluation was to implement the current custody arrangement and that he has not requested an update to the report. (*See id.* at 59-60). The trial court advised that it is not familiar with the details of the evaluation and that it was not in the case file. The court indicated that this information would be very helpful in rendering a decision but that it was the parties' decision whether to call the evaluator as a witness. (*See id.* at 66).

---

[2] The trial court initially ordered a custody evaluation in September 2019 and it was completed on January 30, 2020. However, at the January 2021 hearing, neither party elected to call the evaluator as a witness or submit the report to the court as evidence. (*See* Trial Court Opinion, 3/10/21, at 3).

Regarding his relationship with Mother, Father testified that she follows the court-ordered custody schedule and does not keep Child from him. Father acknowledged that he does not have any large-scale concerns about Mother's mental or physical health. However, Father expressed concerns regarding Mother's household and described maternal grandparents' relationship as "toxic [because] they fight nonstop." (*Id.* at 37). Although Father has a positive relationship with maternal grandfather, Mother's remaining family members have posted negative comments about him on social media and blocked him from accessing their accounts. Father testified that Mother's dependence on her parents is problematic because she lives with them, does not have a full-time job and did not have a license to drive a vehicle.

Father described a July 2020 incident where he "noticed a lot of marks, really bad marks on [Child's] back" after she had been in Mother's care for four days. (*Id.* at 38). Mother informed him that she was not aware of an injury and that there were no marks on Child earlier that day. Mother arrived at Father's house, attempted to take Child from him and blamed him for any marks. Father brought Child to the emergency room, contacted Children and Youth Services (CYS) and filed an emergency petition seeking custody of Child. CYS did not indicate or make any finding of abuse and the parties entered a counseled stipulation agreeing that if any similar incident occurred in the future, the parties would communicate with one another. Father testified that since that time, he has had no concerns regarding Child's safety

while she is in Mother's care. (**See id**. at 43). Father opined that an increase in his custodial time would serve Child's best interests and that he has a strong emotional bond with Child that has strengthened significantly over time.

Mother was twenty-four years old at the time of the hearing and works at a restaurant during Father's periods of physical custody only. Although she did not drive previously, she recently obtained her driver's permit. Mother testified that she performs the bulk of the parenting duties when Child is in her care, including feeding, bathing and medical care. Mother reads books to Child and actively engages in activities to promote her development.

Mother testified that she is supportive of Father's relationship with Child, that she does not want to decrease his time with her and that she has offered him additional custodial time. Mother explained that her parents help with Child's care when needed and that she financially supports Child. Mother disputed Father's characterization of her parents' marriage as conflict-riddled, averring they have a strong marriage and do not expose Child to any disagreements they may have.

**C.**

On January 19, 2021, the trial court denied Father's request for modification of the custody schedule and ordered that the custody arrangement remain unchanged. The court addressed the custody factors

delineated in 23 Pa.C.S. § 5328(a)[3] and found that both parents love Child, provide her with a healthy home environment and meet all of her needs. The

_____

[3] **(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
>
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

*(Footnote Continued Next Page)*

court noted that Father failed to provide any support for the concerns he raised regarding Mother and her family. The court also indicated that detailed information regarding the initial custody evaluation and Father's PTSD diagnosis would have been helpful in rendering its decision. (**See** Trial Ct. Findings and Discussion, 1/19/21, at 5-6). Father timely appealed and filed a contemporaneous Rule 1925 statement. The trial court issued a Rule 1925(a) opinion on March 10, 2021. **See** Pa.R.A.P. 1925(a)(2)(i)-(ii).

---

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16).

**II.**

**A.**

On appeal, Father contends the trial court erred in denying his request for equal physical custody of Child and that "sufficient evidence exists for this [Court] to substitute it judgment for that of the lower court and decide this case on the merits and conclude it is right and just and will serve the best interests of the child to grant Father equal custody . . ." Father amplifies that position by claiming the trial court improperly based its decision on its unfounded concern regarding his PTSD. In Father's view, the record plainly reflects that his PTSD does not impact his parenting abilities at all. Father argues that the court "wants to create a problem where none exist," especially in light of Mother's acknowledgement that he is a good father. (Father's Brief, at 25). Father further maintains the trial court placed unwarranted emphasis on the lack of testimony concerning the custody evaluation and that it should have instead focused only on the actual evidence presented by the parties. Father contends that an equal custody arrangement is in Child's best interests where it is undisputed that he provides a loving, stable home for her.

**B.**

The primary concern in every custody case is the best interests of the child. *See B.S.G. v. D.M.C.*, 2021 WL 2149770, at * 4 (Pa. Super. filed May 27, 2021). This standard is decided on a case-by-case basis and considers all factors that legitimately affect the child's physical, intellectual, moral and

spiritual well-being. ***See id.*** When considering a request to modify custody, a court must conduct a thorough analysis of the best interests of the child based on all of the Section 5328(a) factors. ***See A.V. v. S.T.***, 87 A.3d 818, 822 (Pa. Super. 2014). However, it is within the purview of the trial court as fact-finder to determine which factors are most salient in each particular case. ***See B.S.G. supra*** at *6.

In responding to Father's position that we should substitute our judgment for that of the trial court, *i.e.,* reverse or remand of the trial court decision, the test is whether the trial court's conclusions are unreasonable as demonstrated by the evidence of record. ***See A.H. v. C.M.***, 58 A.3d 823, 825 (Pa. Super. 2012). Under that test, we may reject the court's conclusions only if they involve an error of law or are so unreasonable in light of its sustainable findings that its decision constitutes an abuse of discretion. ***See id.*** With regard to issues of credibility and weight of the evidence, we must defer to the trial judge, who observed and assessed the witnesses first-hand. ***See id.*** The discretion that a trial court employs in custody proceedings must be accorded the utmost respect, given the special nature of the issues and the lasting impact the result will have on the parties' lives. ***See id.***

## C.

In this case, the record reflects that Father's PTSD diagnosis was only one of the factors the trial court considered in rendering its decision not to modify the custody arrangement. The court did note that more

comprehensive information on this and other issues raised by the parties would have been helpful, had it been provided. The court explained that, after considering the evidence before it:

The Court does not find Father's self-serving testimony, taken alone, as dispositive of the issue of his PTSD having an effect on his ability to parent. This Court did not find Father's testimony to be credible that there is no effect on his ability to parent. Father felt the need to alert the Court that he suffered from PTSD but provided no supporting evidence that he was unaffected. Father testified that he receives treatment and goes to appointments and additionally, that a custody evaluation was performed that discussed his PTSD. [An evaluation] as well as documentation from his various appointments could have disposed of the issue Father brought to light. Instead, Father relied on this Court taking his word at face value and presented no evidence outside of his testimony. This Court did, and still does, question Father's credibility as to this issue, and weighed this factor in favor of keeping the custody arrangement the same.

\* \* \*

. . . [Regarding the custody evaluation, Father] did not want the report to be submitted to the Court, stating that if [it] was to be discussed, parties should call [the evaluator] as a witness instead. This Court finds it odd that parties would collectively spend two thousand five hundred dollars ($2,500) on a custody evaluation and not present the evaluation to the Court. Additionally, given the history of this case which concerns a large age gap, PTSD, allegations of abuse . . . this Court noted that having that information would have been immensely helpful, yet did not place any value on it, because it was never mentioned or submitted.

\* \* \*

[Father] alleges throughout the hearing that Mother is unfit due to her age, living circumstances, communication style, online presence, etc. and it was within Father's ability to provide this Court with a full custody evaluation as evidence which he chose not to. Further, this Court has concerns with Father's credibility, which could have been dispelled with the custody evaluation. . . . This Court reviewed the sixteen (16) custody factors and

determined that it was in Child's best interest to maintain the custody arrangement.

(Trial Ct. Op., 3/10/21, at 2-4).

We find no abuse of discretion or error of law in the trial court's decision.[4] The trial court, after observing the demeanor of the parties and assessing their credibility, found Father's testimony in support of modification of the order lacking. It determined Father's claims regarding his PTSD diagnosis as it relates to his parenting of Child lacked credibility because he failed to support his bald claim that it had no effect on his parenting with any type of supporting evidence. We must defer to the court's credibility findings in this regard. *See B.S.G. supra* at \*6.

Furthermore, while information contained in a custody evaluation would have assisted the court, the record reflects that the court carefully weighed all information available to it in conjunction with the statutory custody factors

_____

[4] We find unpersuasive Father's reliance on **M.A.T. v. G.S.T.**, 989 A.2d 11 (Pa. Super. 2010), to support his argument the court disregarded the actual evidence presented in this case and instead imposed its own unsupported view concerning his PTSD diagnosis. (**See** Father's Brief, at 24). In **M.A.T.**, there was uncontradicted expert testimony that it was in the child's best interests for parents to share equal physical custody. The trial court disregarded this expert testimony in favor of its personal view that shared custody is seldom, if ever, in the best interests of a school-age child. This Court held that although the court was not required to adopt the expert's recommendation, it was also not entitled to disregard it and to rely instead on its personal views. **See id.** at 20. In contrast, the instant case involved no expert testimony and there is no indication that the court imposed its personal views without carefully considering the specific circumstances of the parties and Child. **M.A.T.** is, therefore, readily distinguishable from this case.

- 11 -

in making its ruling. Although Father contends the court improperly based its decision on its own personal viewpoint, the record instead reflects that the trial court made its findings based on what it considered to be the best interests of Child and by Father's failure to present salient persuasive evidence to establish his position that modification was warranted.

Finally, as Mother points out, the custody order already in place affords Father substantial periods of physical custody, including weekly overnight visits. It is not unreasonable that this arrangement would continue and the trial court acted within its discretion in concluding that preserving the parties' current physical custody arrangement was in Child's best interests.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/08/2021