J-A16014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| A.C.F.(B.), | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| J.P.B., | |
| Appellee | No. 154 WDA 2016 |

Appeal from the Order December 31, 2015
In the Court of Common Pleas of Cambria County
Civil Division at No(s): 2008-3945

BEFORE:  SHOGAN, OLSON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 19, 2016**

Appellant, A.C.F.(B.) ("Mother") appeals from the order entered on

December 31, 2015, in the Cambria County Court of Common Pleas.  After

careful review, we affirm.

The relevant facts and procedural history of this matter were set forth

by the trial court as follows:

> [Mother] and [Appellee ("Father")] are the parents of two
> minor children, namely, I.C.B. (born [in] 2004) and A.N.B. (born
> [in] 2006) [(collectively "the Children")].  REPORT OF HEARING
> OFFICER AND RECOMMENDED ORDER FILED FOR RECORD ON
> JUN. 11, 2015 [("REPORT")], pg. 1.  The parties are currently
> subject to a Custody Stipulation and Order dated December 31,
> 2008, in which the parties share legal custody, Mother exercises
> primary physical custody, and Father has partial physical custody
> on alternating weekends and 20 additional days annually.

---

[*]  Retired Senior Judge assigned to the Superior Court.

CUSTODY STIPULATION AND ORDER DATED DEC. 31, 2008, ¶¶2-4.

On June 23, 2014, Father filed a Petition for Modification, seeking additional summer periods of custody, as well as modifications to the holiday schedule, transportation requirements, and other provisions. PETITION TO MODIFY CUSTODY ORDER FILED FOR RECORD ON JUN. 23, 2014, ¶7. The Hearing Officer conducted a Pre-Hearing Conference on August 21, 2014, and a full-day custody hearing on January 14, 2015, ORDER DATED SEP. 25, 2014; ORDER DATED OCT. 16, 2014. The hearing did not conclude and was rescheduled for April 1, 2015. ORDER DATED JAN. 27, 2015. The Hearing Officer filed a Report and Recommended Order on June 11, 2015. Mother and Father timely filed Exceptions on June 22, 2015 and July 10, 2015, respectively. The trial court entertained oral argument and ordered production of the hearing transcripts on August 21, 2015. *See* HEARING NOTES OF TRANSCRIPT ["N.T."] (JAN. 14, 2015); (APR. 1, 2015). The trial court issued its Opinion and Order dated December 31, 2015, denying Mother's Exceptions and granting Father's Exceptions. OPINION AND ORDER DATED DEC. 31, 2015, ¶¶1-2. On January 28, 2016, Mother filed a Notice of Appeal and Concise Statement of Matters Complained of on Appeal. The transcript was lodged with the trial court on February 8, 2016. *See* N.T. (AUG. 21, 2015).

Trial Court Opinion, 2/29/16, at 1–2.

On appeal, Mother presents the following issues for this Court's

consideration:

1) Whether the trial court erred by modifying the transportation provision (identified as "Exchanges of Custody" in the December 31, 2015 Order of Court) of Father's periods of partial physical custody such that the minor children will now be required to travel seven to eight hours every other weekend during the school year, which is neither in the minor children's best interest nor supported by the record?

2) Whether the trial court erred in relying on inapposite case law, specifically, *M.O. v. J.T.R.*, 85 A.3d 1058 (Pa. Super. 2014) and failed to consider the sixteen (16) relevant factors set forth

in 23 Pa. C.S. § 5328(a) (1-16) in coming to a best interests analysis?

Mother's Brief at 4.

The Child Custody Act (the "Act"), 23 Pa.C.S. §§ 5321-5340, is applicable to the present matter. *See C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that if the custody evidentiary proceeding commences on or after January 24, 2011, the effective date of the Act, the provisions of the Act apply). In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id*. at 443 (citation omitted).

We have stated:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (*quoting*

***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In ***M.A.T. v. G.S.T.***, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we

stated the following regarding an abuse of discretion standard:

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

***Id***. at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern

is the best interests of the child. 23 Pa.C.S. §§ 5328, 5338. The Act

provides that, upon petition, a trial court may modify a custody order if it

serves the best interests of the child. 23 Pa.C.S. § 5338. Moreover, the Act

sets forth the best-interest factors that the trial court is to consider:

> **(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide

- 4 -

adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Mother argues that the trial court abused its discretion and committed an error of law when it *sua sponte* modified the travel provisions of the parties' consent order. Mother's Brief at 13. Mother asserts that Father did not request a modification of the travel provision in his petition for modification or at the hearing on his petition, such that the trial court's modification of the provision is improper. *Id*. at 13–14. Alternatively, Mother contends that, if the trial court had authority to modify the travel provision of the consent order, the modification was contrary to the Children's best interests and manifestly unreasonable. *Id*. at 16–17.

Specifically, Mother asserts the following:

> The parties' custody arrangement has been governed by the Consent Order for nearly eight years. Under its terms, which the parties agreed to, the custody exchange location is the [m]other's residence in Johnstown, and Father is required to exchange custody there. Under this arrangement, Father traditionally has exercised virtually all of his alternating weekends of custody during the school year at his parents' house in Johnstown. Father's parents live approximately two miles from Mother's residence.

> The trial court's order designates the Blue Mountain Service Plaza [on the Pennsylvania Turnpike] as the new custody exchange location. The Blue Mountain Service Plaza is located approximately 140 miles from Mother's residence and 111 miles

from Father's residence. The trial court's modification of the custody exchange location requires the children to travel seven to eight hours every other weekend during the school year. The significant travel required of the minor children during the school year alone is contrary to the children's best interests.

In addition to forcing the children to travel significant distances at least two times a month, the trial court's modification of the custody exchange location would also have the effect of forcing the children to miss their extracurricular activities. In the alternative, if Father exercises his custodial time in Johnstown so the children do not miss activities, under the trial court's order[,] the parties would meet at the Blue Mountain Service Plaza only for Father to turn the children around and return [to] Johnstown. This unintended and unreasonable result was not contemplated by the parties and is against the children's best interests.

The substantial distance between Mother and Father's residences coupled with the children's inevitable absence from their extracurricular activities, illuminate the trial court's failure to adequately consider the children's best interests. The trial court fails to point to any evidence of record to support its conclusion that changing the custody exchange location is in the children's best interests. To the contrary, the record is replete with evidence against modification of this provision.

Mother's Brief at 10–11 (internal citations omitted).

Paragraphs five and six of the trial court's December 31, 2015 order

provide as follows:

5. The parties shall exchange custody at the Blue Mountain Pennsylvania Turnpike Service Plaza unless otherwise agreed.

6. All other aspects of the Custody Order executed on December 31, 20[08], not in conflict with this Order shall remain in full force and effect.

Order, 12/31/15.

The trial court addressed Mother's first issue as follows:

Mother contends that the trial court "erred by modifying the transportation provision [for Father's] periods of partial physical custody such that the minor children will now be required to travel seven to eight hours every other weekend during the school year, which is neither in the minor children's best interest nor supported by the record." CONCISE STATEMENT, ¶ 1. Under the Pennsylvania Child Custody Act [the "Act"], "a court may modify a custody order to serve the best interest of the child." 23 PA.C.S.A. § 5338(a).

In this case, Mother and Father live roughly 200 miles apart. *See* N.T. (APR. 1, 2015), pgs[.] 79-80 (Mother resides in Johnstown (western Pennsylvania); N.T. (JAN. 14, 2015), pg. 87 (Father resides in Lincoln University (southeastern Pennsylvania)). *See also* N.T. (JAN. 14, 2015), pg. 147; N.T. (AUG. 21, 2015) pg. 10 (noting that Mother unilaterally moved the children 200 miles away from Father). Mother argued that the custody exchange location "unnecessarily put[s] the children in danger and on the Turnpike and Interstate highways throughout the year, especially in winter (inclement weather) and summer (high traffic times), given the distance between the residence[s]." MOTHER'S EXCEPTIONS, ¶ 11; N.T. (AUG. 21, 2015), pgs. 9-10. Yet, Mother admits that she personally placed the children in the same "danger" during various visits to her parents in northeastern Maryland, N.T. (APR. 1, 2015), pgs. 145, 162; her transportation of the children to Father's residence in Maryland, N.T. (APR. 1, 2015), pg. 138; her visits to her brother in Lancaster, Pennsylvania, N.T. (APR. 1, 2015), pg. 163; and the child's travel hockey squad, N.T. (APR. 1, 2015), pg. 87. *See also* N.T. (AUG. 21, 2015), pgs. 22, 27-28. Additionally, neither child testified regarding fearing, disliking, or experiencing adverse feelings about traveling between their parents' residences. *See* N.T. (JAN. 14, 2015), pgs. 4-86. Therefore, the trial court found Mother's arguments to be disingenuous and unsupported by the record.

Additionally, the trial court specifically considered the hearing officer's discussion regarding custody exchanges:

> The Hearing Officer recognizes that the parties agreed to have Father provide all the transportation for the custody exchanges when the Custody Stipulation and Order was entered on December 31, 2008. Father now wants to have Mother do all the

transportation over the summer months and then share this responsibility the rest of the year. Mother is content to let the current arrangement remain as stated in the Order.

The Hearing Officer understands the amount of time it takes to travel between the parties' residences and the costs associated, e.g., gasoline, tolls, etc., with such travel. Equity and fairness dictate that this time and these costs be shared equally between the parties, especially since both have the time and financial means to transport the children. Because of the distance involved, the Hearing Officer is recommending that the parties chose [sic] a point that is as equidistant as possible between their respective homes to make the custody exchanges throughout the year. Should the parties fail to reach an agreement as to this location, the Hearing Officer recommends that the exchanges occur at the Willow Hill Exit on the Pennsylvania Turnpike as this is roughly the halfway point in time and mileage between the two homes.

REPORT, DISCUSSION, pgs. 20-21 (referencing CUSTODY STIPULATION AND ORDER DATED DEC. 31, 2008, ¶ 5).

Further, the trial court reasoned that the Blue Mountain turnpike exit is a closer halfway point than the Willow Hill turnpike exit, as follows:

The Blue Mountain Service Plaza along the Pennsylvania Turnpike is approximately 140 miles from Mother's residence and 111 miles from Father's residence. Compared to the other Service Plazas, Blue Mountain is a reasonably close midpoint between the residences. Father also testified that while he lives three and a half hours away from Mother's residence, his work is four hours away and he often leaves from work to retrieve the children. N.T. (JAN. 14, 2015), pg. 88, 93, 147-149. Overall, Blue Mountain would be a closer midpoint between Father's work and Mother's residence. Additionally, the [c]ourt notes that Father has provided nearly all of the transportation for custody exchanges since

> 2008. **See** N.T. (JAN. 14, 2015), pg. 208; CUSTODY STIPULATION AND ORDER DATED DEC. 31, 2008, ¶ 5. Thus, any "extra" miles in favor of Father is reasonable considering he provided nearly all transportation until this point. Therefore, for all of the foregoing reasons, the [c]ourt finds the Blue Mountain midpoint reasonable based on the evidence provided[.]

OPINION [and Order] DATED DEC. 31, 2015, pgs. 4-5.

> Overall, Mother failed to present any legal error regarding the custody exchanges. Moreover, the trial court found that the Hearing Officer's findings and recommendations were appropriately supported by the record and in the best interests of the minor children. Therefore, the trial court submits that it properly modified the parties' custody exchange location. **See** OPINION AND ORDER DATED DEC. 31, 2015.

Trial Court Opinion, 2/29/16, at 3–5.

Additionally, while Mother contends that the trial court improperly modified the transportation provision of the consent order *sua sponte*, we note that in his modification petition, Father described the transportation issues and expressly requested that he have some partial custody of the Children at his residence. Petition, 6/23/14, at ¶¶ C, G, and H. At the hearings, Father requested that Mother be required to provide all transportation during the summer months. N.T., 1/14/15, at 92–93. Father also stated that he would like the option of meeting Mother at the midway point between the two parents' homes. *Id*. at 209. We conclude that Father did indeed place the transportation issues and exchange point before the court for resolution, and the trial court, therefore, did not improperly address the matter of custody exchange. Moreover, the trial court did not

err or abuse its discretion when it modified the transportation provision if the parties could not otherwise agree. The trial court considered the best interests of the Children in selecting the Blue Mountain Service Plaza as a default exchange location because it is located between the parents' homes.

Additionally, Mother claims that the trial court erred in altering the location for exchanges of custody because Father did not specifically request this relief, and thus, it cannot be granted pursuant to *Hill v. Hill*, 619 A.2d 1086 (Pa. Super. 1993). Mother's Brief at 13. First, as we concluded above, the transportation issues were properly before the court. Additionally, however, we point out that *Hill* is readily distinguishable.

In *Hill*, this Court held that the trial court erred in fashioning an order that nominally gave the mother and father shared legal custody, but it effectively granted sole legal custody to the mother because it allowed her decisions to override father's decisions in the event of a disagreement. *Id*. at 1088. We concluded that the mother never requested sole legal custody and that the trial court's hybrid order was not recognized by statute or case law. *Id*.

Thus, in *Hill*, we reviewed an order that granted relief that was not requested and not permitted by law. Here, transportation was at issue throughout the proceedings, and Mother has not indicated that the December 31, 2015 order was a hybrid order otherwise impermissible under

statute or case law. Mother's argument that the trial court's December 31, 2015 order ran afoul of **Hill** is meritless.

In her second related issue, Mother argues that the trial court's failure to adequately consider the Children's best interests stems from its failure to address the relevant custody factors set forth in 23 Pa.C.S. § 5328(a). Mother asserts that, if the trial court had properly addressed the section 5328(a) factors, it likely would not have reached a conclusion that modification of the custody exchange location is in the best interest of the Children. Mother's Brief at 11–12. Accordingly, Mother requests this Court to reverse the trial court's modification of the travel provision of the parties' consent order.

The trial court addressed Mother's second issue as follows:

> Mother contends that the trial court "erred in relying on inapposite case law, specifically, **M.O. v. J.T.R.**, 85 A.3d 1058 (Pa. Super. 2014), and failed to consider the sixteen (16) relevant factors set forth in 23 PA. C.S.A. § 5328(a)(1-16) in coming to a best interests analysis." CONCISE STATEMENT, ¶ 2.

> Section 5328(a) of the Act establishes mandatory considerations for a trial court determining best interests in a custody matter. . . .

> Section 5323 of the Act defines an "award of custody," reiterates the trial court's mandatory consideration of the Section 5328 factors, and requires the trial court to provide its rationale for the custody award:

>> **(a) Type of award**.—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

> (1) Shared physical custody.
> (2) Primary physical custody.
> (3) Partial physical custody.
> (4) Sole physical custody.
> (5) Supervised physical custody.
> (6) Shared legal custody.
> (7) Sole legal custody.
>
> \* \* \*
>
> **(d) Reasons for award.**—The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order.

23 PA. C.S.A. § 5323(a), (d) (emphasis in original). However, modification of a custody order does not carry the same requirements as an award of custody and must only "serve the best interest of the child." 23 PA. C.S.A. § 5338(a).

The Superior Court of Pennsylvania specifically addressed this issue in **M.O. v. J.T.R.**, 85 A.3d 1058 (Pa. Super. 2014). In **M.O.**, the parties were subject to a consent order in which the mother had primary custody of the children and the father had partial custody, including six summer weeks. **Id.** at 1060. The father sought modification of the consent order, as amended, seeking additional time, a change in transportation responsibilities, and clarification of the prior order. **Id.** Just prior to the custody hearing, the parties resolved all issues by agreement, except whether the father could work during his summer weeks of custody. **Id.** The trial court found in favor of the father. **Id.** The mother appealed, claiming, **inter alia**, that the trial court committed error and/or an abuse of discretion for failing to consider the Section 5328 factors. **Id.** at 1060-1061. The Superior Court of Pennsylvania explained:

> The plain language of Section 5328(a) requires that the sixteen enumerated factors be considered when the court is determining a child's best interest for the purpose of making an award of custody. By contrast, while the court must consider the child's best interest when modifying a custody order, the modification provision does not refer to the sixteen factors of Section 5328. The cases in which we have applied Section 5328(a) have involved the award of

- 13 -

custody as defined by Section 5323(a) or have involved a modification that also entailed a change to an award of custody.

Following the hearing in this case, the trial court made no award of custody. The court was not deciding physical or legal custody, nor even changing the amount of custodial time that either party had with the Children. Rather, the trial court addressed a subsidiary issue: whether Father was required to be off from work while the Children stayed with him for a portion of the summer. After hearing the evidence that the parties presented limited to that sole issue, the trial court decided that Father could work during the three weeks in question. While the court's ruling modified its prior order, it did not change the underlying award of custody. Therefore, under the facts of this case, Section 5328(a) was not implicated directly.

Because the trial court did not make an award of custody, but merely modified a discrete custody-related issue, it was not bound to address the sixteen statutory factors in determining the Children's best interest.

*M.O.*, 85 A.3d at 1062–1063 (citations and footnotes omitted).

In a subsequent case, the Superior Court further explained:

A reading of the § 5328(a) factors further supports our interpretation that all these factors only must be considered when a "form of custody" is ordered. Most of the § 5328(a) factors are better suited to addressing the larger issue of the form of custody to be awarded, rather than considerations beneficial to resolving discrete and ancillary disputes relating to custody. In the latter, the considerations that could affect a trial court's decision are myriad. Thus, it makes little sense for a trial court to analyze each of the sixteen 5328(a) factors when arbitrating, for example, **a dispute over a custody exchange location**; which youth sports the children should

- 14 -

play; or whether a parent should be required to have children's toys, beds, or other things in his or her house. Rather, when read as a whole, it is apparent that the § 5328(a) factors were designed to guide the best-interest analysis when a trial court is ordering which party has the right to a form of custody.

**S.W.D. v. S.A.R.**, 96 A.3d 396, 403 (Pa. Super. 2014) (footnote omitted) (original emphasis omitted) (emphasis added). Although there is no requirement to consider all relevant Section 5328 factors, the trial court must determine whether the custody modification was in the children's best interest. **M.O.**, 85 A.3d at 1063; **S.W.D.**, 96 A.3d at 403.

In the instant case, Father sought additional summer periods of custody, as well as modifications to the holiday schedule, transportation requirements, and restrictions. PETITION TO MODIFY CUSTODY ORDER FILED FOR RECORD ON JUN. 23, 2014, ¶ 7. Father did not challenge the underlying award of custody, namely Mother's primary physical custody and his partial physical custody. ORDER DATED DEC. 31, 2008, ¶¶ 2-4. Similarly, Mother did not challenge the parties' awards of custody at the hearings below, in her Exceptions, or on appeal. **See** N.T. (APR. 1, 2015) pgs. 79-209; MOTHER'S EXCEPTIONS FILED FOR RECORD ON JUN. 22, 2015, ¶¶ 8-29; N.T. (AUG. 21, 2015), pgs. 2-21; CONCISE STATEMENT, ¶¶ 1-2. Moreover, the trial court submits that it carefully considered the best interests of the child in reaching its determination regarding the issues raised in Father's Petition for Modification and the parties' Exceptions. **See supra**; REPORT, pgs. 1-28; OPINION DATED DEC. 31 ,2015, pgs. 2-5. Based on the foregoing, the trial court was not required to consider the Section 5328 factors before ruling on discrete and ancillary issues subsidiary to the award of custody.

Trial Court Opinion, 2/29/16, at 5–8.

We agree that the trial court appropriately relied on **M.O.** and considered the custody exchange location without considering the section

5328(a) best-interest factors. Accordingly, we affirm the order of the trial court.

        Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2016