J-A12016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| E.R.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.J.C., JR. | : | No. 1320 MDA 2020 |

Appeal from the Order Entered September 11, 2020
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
201507957

BEFORE:  LAZARUS, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:          **FILED: July 30, 2021**

E.R.C. (Mother) appeals from the order, entered in the Court of Common Pleas of Luzerne County, denying her petition to modify a stipulated custody order.  After our review, we affirm based on the opinion authored by the Honorable Fred A. Pierantoni, III.

Mother and K.J.C., Jr. (Father) are the parents of A.C. (born April 2007) and M.C. (born December 2011) (minor children).  The parties, who live within walking distance of one another (1.5 miles) and reside in the same school district, entered into an agreement on January 7, 2018, which the court entered as a stipulated custody order on February 8, 2018.  That order provided that the parties would share legal custody of the minor children.  The order provided Father with primary physical custody and Mother with partial physical custody as follows:

> Mother shall have periods of physical custody of the minor children based upon a two (2)-week repeating cycle as follows:
>
> Beginning Wednesday, January 17, 2018[,] and every other Wednesday thereafter, Mother shall have physical custody of the minor children from after school until the following Monday morning at which time Mother shall transport the minor children to school (if no school, then to Father's residence).
>
> Beginning Wednesday, January 24, 2018[,] and on all alternating Wednesdays thereafter, Mother shall have physical custody of the minor children from after school until the following morning, at which time Mother shall transport the minor children to school (if no school, then to Father's residence).

Stipulated Custody Order, 2/8/18,at ¶ 5a-b. The order also provided the parties share holidays and required the parties to engage in co-parenting counseling. *Id.* at ¶¶ 6-12, 21.

On February 7, 2019, Mother filed a petition for modification and a custody trial listing. On September 24, 2019, the court ordered a pretrial conference for December 6, 2019. The custody trial took place on August 31, 2020.[1] Following trial, the court entered an order on September 11, 2020, denying Mother's petition for modification and ordering the stipulated custody order remain in full force and effect. On October 13, 2020, Mother filed this

---

[1] Trial was originally scheduled for March 31, 2020. Due to the statewide judicial emergency declared as a result of the COVID-19 pandemic, trial was delayed until August 31, 2020. **See** Rescheduling Orders, 4/15/20, 6/24/20, 6/30/20. It is unclear from the record what caused the seven-month delay prior to the pandemic.

timely appeal.[2]  Both Mother and the trial court have complied with Pa.R.A.P.
1925.

Mother raises the following issues on appeal:

1. Did the trial court abuse its discretion or commit an error of
   law in its September 11, 2020 order in that it denies Mother
   [shared] physical custody of her minor children?

2. Did the trial court abuse its discretion or commit an error of
   law in its September 11, 2020 order in that it confirms that
   both parties are to have shared legal and shared physical
   custody of their minor children but denies [Mother] actual
   shared [] physical custody of the minor children in terms of
   time spent with each parent?

3. Did the trial court abuse its discretion or commit an error of
   law in limiting Mother's [] physical custody of her minor
   children without any evidence or testimony that Mother's
   time with her minor children should be restricted or unequal
   to that of Father?

---

[2]  Generally, a notice of appeal must be filed within 30 days after the entry of
the order from which the appeal is taken.  *See* Pa.R.A.P. 903(a).  Here, the
30th day was Monday, October 12, 2020.  Our legislature has designated the
second Monday in October, known as Columbus Day, a legal holiday.  *See* 44
P.S. § 11. Thus, Mother's appeal, filed on Tuesday, October 13, 2020, was
timely.  *See* Pa.R.A.P. 903(a).  *See also* Official Note-Pa.R.A.P. 903, which
provides:

Rule of Appellate Procedure 107 incorporates by reference the
rules of construction of the Statutory Construction Act of 1972, 1
Pa.C.S. §§ 1901 through 1991.  *See* 1 Pa.C.S. § 1908, relating to
computation of time for the rule of construction relating to (1) the
exclusion of the first day and inclusion of the last day of a time
period and (2) the omission of the last day of a time period which
falls on Saturday, Sunday or legal holiday.

*Id.*

4. Did the trial court abuse its discretion or commit an error of law in refusing to interview the minor children *in camera* as requested by Mother and failed to give appropriate weight to the proffered testimony of the minor children that the custody schedule should be modified to provide Mother with additional periods of custody?[3]

5. Were the trial court's conclusions unreasonable as shown by the evidence of record?

6. Did the trial court abuse its discretion or commit an error of law by failing to enter a custody order that is in the best interests of the minor children?

Appellant's Brief, at 4.

Our scope and standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F., III v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable

_____

[3] Mother failed to raise this issue in her Rule 1925(b) concise statement of errors complained of on appeal. ***See*** Rule 1925 Statement, 10/13/20. This claim, therefore, is waived. ***See In re C.M.***, 882 A.2d 507, 515 (Pa. Super. 2005).

- 4 -

as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

***M.A.T. v. G.S.T.***, 989 A.2d 11, 18-19 (Pa. Super. 2010) (en banc) (internal citations omitted). Further,

The parties cannot dictate the amount of weight the trial court places on the evidence. . . . Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa. Super. 2009).

The paramount concern in any custody case under the Child Custody Act (the Act) is the best interests of the child. ***C.G. v. J.H.***, 193 A.3d 891, 909 (Pa. 2018). In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors. ***See*** 23 Pa.C.S. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the "best interests of the child." ***See*** 23 Pa.C.S. § 5338. Section 5328(a) sets forth the factors that the trial court must consider in awarding custody:

§ 5328. Factors to consider when awarding custody

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm

to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. §§ 5328(a) (1)-(16). Moreover, section 5323(d) mandates that, when the trial court awards custody, it "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." *Id.* at § 5323(d).

Initially, we note that Mother argues that the court's September 11, 2020 order "awarded, granted and ordered both parties to have shared legal and shared physical custody of their minor children, but denied [Mother] actual shared physical custody of the minor children[.]" *See* Appellant's Brief, at 10. This is inaccurate. The September 11, 2020 order denied Mother's petition for modification, in which she sought shared physical custody, and ordered the existing stipulated custody order "remain in full force and effect." *See* Order, 9/11/20. The existing order specifically awarded primary physical custody to Father. *See* Stipulated Custody Order, 2/8/18, at ¶ 4. We also note that Mother's proposal of a shared physical custody arrangement would give her one additional overnight with the children. *See* N.T. Custody Trial, 8/31/20, at 38-39 (Q: "So you have a total of six overnights in a two-week, 14-day cycle; right?" A: "That's right." Q: And sharing would be one additional overnight; right? Seven?" A: "That's correct.").

After our review of the parties' briefs, the record, and the relevant law, we find no error or abuse of discretion in the trial court's decision. In its opinion in support of its order, the trial court carefully analyzed and addressed each section 5328(a) factor and considered the minor children's best interests. *See* Trial Court Opinion, 9/11/20, at 11-15. Though most of the factors were

neutral, two favored Father. Testimony from trial indicated that Father was flexible and willing to offer Mother additional periods of physical custody, and Father has a four-year-old son who is the minor children's half-brother. The court did find that Father had two prior convictions for driving under the influence (in 2006 and 2014), but also found Father's living situation more stable, noting that Mother had moved to Florida with her paramour in June of 2016, but had the minor children with her for the summer, and then returned in December of 2016. *See id.*, at 4-5, 9. *See also R.M.G., Jr.*, *supra* at 1237 (parties cannot dictate amount of weight trial court places on evidence).

Additionally, the court emphasized that the minor children are thriving under the present schedule; "according to both Mother and Father, [the minor children] are thriving physically, intellectually, spiritually, and morally under the current custody scheme in which Father has assumed the role of primary caretaker." *Id.* at 17. Mother's testimony confirmed this. *See* N.T., *supra* at 40 (Q: "And would you agree that [the minor children] are both doing very well academically under the current schedule?" A: "Yes, they are." Q: "In fact, your oldest daughter has received [] accolades [] from the school in terms of math and science[?]" A: "Yes. Both of my children have [received] straight A's their entire school li[ves].").

We agree with the court that Mother has not established that a change in the current custody arrangement is in the minor children's best interests, *see* Trial Court Opinion, 9/11/20, 19, and we are satisfied that the court's

findings are supported by the evidence. We discern no abuse of discretion. **M.A.T.**, *supra*.

We rely on Judge Pierantoni's opinion to affirm the custody order. We direct the parties to attach a copy of that opinion in the event of further proceedings in this matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2021

Filed 2/19/2021 8:02:00 PM Superior Court Middle District
1320 MDA 2020

# IN THE SUPERIOR COURT OF PENNSYLVANIA

---

## No. 1320 MDA 2020

---

E.R.C.,

Appellant/Plaintiff,

v.

K.J.C., JR.,

Appellee/Defendant

---

Appeal from the Order Dated September 11, 2019 of the
Court of Common Pleas of Luzerne County

---

## REPRODUCED RECORD, VOLUME II

---

ANDREW JOSEPH KATSOCK, III, Esquire
Supreme Court I.D. #59011
Attorney for Appellant/Plaintiff below
15 Sunrise Drive
Wilkes-Barre, Pennsylvania 18705
(570) 829-5884

Dated: February 19, 2021

# TABLE OF CONTENTS

OPINION OF COURT DATED SEPTEMBER 11, 2020.....................................................44a

ORDER OF COURT DATED SEPTEMBER 11, 2020.........................................................63a

NOTICE OF APPEAL...........................................................................................65a

CONCISE STATEMENT OF ERRORS COMPLAINED OF ON APPEAL PURSUANT TO PA. R. A. P. 1925 (b)......................................................................................66a

Copies Mailed     09/11/2020

████████████████ ,          : IN THE COURT OF COMMON PLEAS
                             : OF LUZERNE COUNTY
        Plaintiff,           :
                             : CIVIL ACTION – LAW
    v.                       :     IN CUSTODY
                             :
████████████████████ ,       : NO.:   7957 OF 2015
                             :
        Defendant            :

## OPINION

Plaintiff, ████████████████ (hereinafter referred to as "Mother"), is the

biological mother of the minor children, A.C., born in 2007, and M.C., born in

2011 (hereinafter collectively referred to as "Children"). Mother resides at 143

West Dorrance Street, Borough of Kingston, Luzerne County, Pennsylvania.

Defendant, ██████████████████ (hereinafter referred to as "Father"), is

the biological father of the Children. Father resides at 306 Walnut Street, Borough

of Luzerne, Luzerne County, Pennsylvania.

44a

Mother and Father had been married but are now divorced.

## I. PROCEDURAL HISTORY

On July 16, 2015, Mother filed a Petition for Custody, in which Mother requested primary physical and primary legal custody of the Children.

On September 1, 2015, Father filed an Answer and Counterclaim, in which Father sought shared physical and shared legal custody of the Children.

After various petitions and corresponding orders, Mother and Father agreed upon a Stipulated Custody Order, executed January 7, 2018,[1] which currently governs the custody of the Children. The Stipulated Custody Order provided the parties shall share legal custody with Father having primary physical and Mother periods of partial physical custody of the Children. Under the Stipulated Custody Order, Mother's periods of partial physical custody amount to a total of six (6) nights out of every fourteen (14) with the Children.

On February 7, 2019, Mother filed a Petition for Custody Trial, seeking reconsideration and alteration of the primary physical custody arrangement agreed upon in the January 7, 2018, Stipulated Custody Order. Mother's February 7, 2019, Petition sought primary physical custody of the Children be awarded to Mother.

---

[1] Filed of record February 8, 2018.

On December 5, 2019, Father filed a Pre-Trial Memorandum indicating Father seeks to maintain the physical custody arrangement agreed upon in the January 7, 2018, Stipulated Custody Order.

Trial was originally scheduled for March 31, 2020, but due to the ongoing COVID-19 pandemic, was delayed on several occasions.

On August 31, 2020, a Custody Trial was held before this Court. At the outset of trial, Mother amended her requested relief to seek a 50/50 shared physical custody arrangement.

## II. SYNOPSIS OF TESTIMONY

Mother, Father, and Melissa Newton testified at trial.

### A. TESTIMONY OF MOTHER

Mother testified she has for three years resided at 143 West Dorrance Street in the Borough of Kingston with her fiancée ████████████ (hereinafter referred to as "████████") and Jacobosky's twelve-year-old son. She has been in a romantic relationship with her fiancée for six years. She owns the two-story Kingston home, which has multiple bedrooms and two bathrooms. The Children share a bedroom which has one closet for each child. The home also includes a back yard with full-size trampoline and a swimming pool.

Mother has been licensed as a registered nurse since June of 2015 and is employed as such in the emergency department at the local Veterans

46a

Administration hospital. Her fiancée is a real estate developer and contractor for the past eleven years.

Father and Mother met in high school, began dating in 2004, were married in 2008, and are now divorced. Father enlisted in the United States Army just prior to their marriage. Mother, Father, and the elder of the Children lived in Wilkes-Barre, Luzerne County, until Father was deployed, after which Mother and the elder of the Children moved to upstate New York. After the younger of the Children was born in 2011, Mother and Father separated in 2012, at which point Mother, with Children, moved back to Pennsylvania in order to pursue a degree and career in the nursing field. Mother and Father reconciled in 2013 after Father's discharge from the military, at which point Father reunited with Mother and Children upon also moving back to Pennsylvania. Mother and Father were together again for approximately one year until they separated in 2014, at which point both moved out of their common household and Mother retained the Children.

Mother had filed for primary physical custody in 2015, and in November of that year, the parties had agreed upon a shared physical custody scheme. In June of 2016, Mother moved to Florida, again to pursue advancement in her nursing career, at which time, she agreed to vest Father with primary physical custody of the Children. Mother enjoyed the summer with the Children and then provided the Children to Father for the beginning of the academic school year, as she continued

in Florida. Mother returned to Pennsylvania in or around December of 2016, at which time she again sought primary physical custody. While sharing physical custody since Mother's return to Pennsylvania, the parties ultimately arrived at the present custody scheme which was agreed upon in the January 7, 2018, Stipulated Custody Order.

Mother testified that the governing Stipulated Custody Order is not working well, as she asserts there are long stretches of time when the Children are not with her in between her agreed-upon periods of partial physical custody. She stated that a 50/50 split would be in the best interest of the Children because she would have one more overnight period with them and that the Children would have equal time with both parents. Mother stated she believes such an apportionment would be better for the Children as there would be shorter gaps between time spent with either parent.

She indicated that Father's residence is approximately one and a half (1.5) miles from hers, which gives rise to no transportation issues surrounding exchange of physical custody. This also means that both parents reside in the same school district and that the Children have been doing well academically. Mother testified that she sets her own work schedule and only works while Father has the Children.

Mother testified that when she is with the Children, she takes vacations, goes to water parks, shops, cooks, does arts and crafts activities, and assists and has

48a

assisted them in learning to read and write. She testified that the Children get along with her fiancée and his son, with each of whom they go to the park, go bowling, skating, and water-skiing, ride bikes and skateboards, and participate in recreational activities together as a family. Mother also testified that she does take the Children to medical appointments and communicates with Father regarding the same.

Mother testified that communication, generally, with Father is difficult, indicating she has been cursed at and referred to as incompetent and incapable of handling the Children. On cross examination, Mother admitted to also having used profanity in communicating with Father.

## B. TESTIMONY OF FATHER

Father testified he has resided at 306 Walnut Street in the Borough of Luzerne for approximately five years. He shares his residence with his fiancée, ███████████ (hereinafter referred to as ████████), their son (hereinafter referred to as "Half-Brother"), aged four years, and Newton's two daughters, aged thirteen and nine years, respectively. Father's residence includes four bedrooms, common living space, and a back yard with pool, fire pit, trampoline, and slide. Father and Newton share one bedroom, their son has one bedroom, and each of the other bedrooms are shared by two of the girls—one bedroom by Newton's

49a

thirteen-year-old and A.C., also thirteen, and one by Newton's nine-year-old and M.C., aged eight years.

Father testified the Children have loving relationships both with Newton's children and with their Half-Brother. He stated the children constantly play together outside, watch television together, and participate in other shared play activities. Father testified when he has the Children, he, Newton, Newton's children, Half-Brother, and the Children participate in family vacations, attend birthday parties, go bowling, regularly take family portraits, take other day trips, participate in seasonal/holiday family activities, share domestic family activities, and have family game nights and movie nights.

Father testified that he is currently unemployed and receives compensation as a disabled veteran since 2011 due to multiple bulged discs resulting in degenerative disc disease, nerve damage in his right leg, bilateral tinnitus, and a diagnosis of post-traumatic stress disorder. Due to his disabled and unemployed status, Father states that his daughters are his life—he is an active parent-teacher organization member, chaperones field trips, and attends and participates in sporting events such as cheerleading and soccer. Father testified that, along with his disability compensation, Newton's income allows he and Newton to provide for the Children's needs, basic necessities, and all desired extracurricular activities.

50a

Father stated that the Children presently are flourishing socially and academically. Father stated he does homework with the Children and that last school year they attained awards and high honors in math and English language subjects. Father stated he has had some minor concern with the Children not attending school when with Mother, but that it was not a major concern. Father also testified to his efforts to promote and instill responsibility in the Children, enacting and enforcing a chore chart at his residence for the Children and Newton's children as well. The chore scheme includes a system of rewards such as permission for special social activities, provision of desired items, and monetary rewards.

Father testified he and Mother entered the agreed-upon Stipulated Custody Order in 2018 which provided him with primary physical custody of Children. Under the discretionary framework of this agreement, Father stated he has provided Mother with additional overnights with the Children amounting to Mother's current total of six overnights out of every fourteen-day period. When asked why he opposes the modification to 50/50 proposed by Mother, he stated the Children have had the existing schedule for years. Father stated the Children, Father and his household, and Mother are all accustomed to the existing schedule. Father testified he also accommodates requests by Mother for additional time with Children absent prior scheduling conflicts, and that each parent has roughly equal

51a

holiday and vacation time with Children under the existing schedule. Father testified the proposed modification would result in the Children having less time with Half-Brother.

Father testified he believes he is unable effectively to communicate with Mother, and that he believes Mother twists his words and actions into being viewed as neglectful. He stated that the 50/50 split proposed, which would amount to one additional overnight every two-week period, will not resolve the communication issue between the parties.

Father testified that he has two prior convictions for driving under the influence, one in 2006 and another in 2014, the second of which occurred after both Children were born.

## C. TESTIMONY OF MELISSA NEWTON

Newton testified that she shares the Luzerne home with Father and the aforementioned children. She has been in a romantic relationship with Father for six years. She is an administrator at an insurance agency and a real estate agent, working at the insurance agency from 9:00 A.M. to 12:30 P.M. and engaging in her real estate business on the side. She testified that together, she and Father are able to pay all household bills, provide, food and clothing, and pay for additional fun activities for all children in the household.

52a

Newton has had ample opportunity to observe Father with the Children. She testified that Father is loving, caring, kind, and committed to the Children. Father engages with Children in the activities of daily life, such as cooking, getting them ready for school, and ensuring compliance with current virtual schooling requirements. Father participates in leisure activities with the Children as testified to by Father. She has observed Father with Children during illness, wherein Father has provided care and taken Children to medical appointments. She has observed no physical or mental limitations of Father that prevent or would prevent him from caring for the Children.

She testified she and Father share a child together, that being Half-Brother of the Children. Newton states the Children love their Half-Brother and that all of the children get along, with some bickering as is to be expected.

## III. DISCUSSION

The paramount concern in cases involving custody of a child is the child's best interest, based on consideration of all factors that legitimately affect the child's physical, intellectual, moral, and spiritual well-being. Bovard v. Baker, 775 A.2d 835, 838-39, 2001 Pa. Super. 126, ¶ 6 (Pa. Super. Ct. 2001); C.W. v. K.A.W., 774 A.2d 745, 748, 2001 Pa. Super. 90, ¶ 7 (Pa. Super. Ct. 2001); 23 Pa. C.S.A. § 5328(a). Further, in determining what will serve the best interest of the child, the

53a

trial court must consider all of the facts and circumstances of a given case. Clapper v. Clapper, 578 A.2d 17, 19, 396 Pa. Super. 49, 52-53 (Pa. Super. Ct. 1990).

The court must consider the procedures and legal standards set forth in the Child Custody Act, 23 Pa. C.S.A. §§ 5321-40 (hereinafter referred to as "the Act"). Section 5328 sets forth a list of sixteen factors that must be considered in a best interest of the child analysis when making any custody determination. 23 Pa. C.S.A. § 5328(a).

This Court, giving weighted consideration to those factors which affect the safety of the Child, now enters its Order in consideration of the applicable and relevant custody factors contained in Sections 5328(a) as hereinafter set forth.

A. **BEST INTEREST FACTORS**

1. **Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.**

Testimony indicated Father has offered to Mother additional periods of physical custody during the course of the instant matter.

2. **The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and**

54a

which party can better provide adequate physical safeguards and supervision of the child.

None indicated.

2.1     The information set forth in Section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

None indicated.

3.     The parental duties performed by each party on behalf of the child.

Each parent provides adequately for the Children while in their respective physical custody.

4.     The need for stability and continuity in the child's education, family life, and community life.

Children are thriving academically and on all levels in family and community life under the present schedule of custody.

5.     The availability of extended family.

Each parent has a paramour. Mother's paramour has a minor son. Father's paramour has two daughters not related by blood or marriage to Children. No other testimony offered as to extended family.

6.     The child's sibling relationships.

55a

Father and his paramour share a four-year-old son who is related to Children by blood, being their Half-Brother.

7.    The well-reasoned preference of the child, based on the child's maturity and judgment.

The Children did not testify. Neither party called the Children as witnesses in their case-in-chief or otherwise.

8.    The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

None indicated.

9.    Which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs.

Each party adequately provides Children with love and nurturing and meets the emotional needs of the Children with consistency.

10.    Which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child.

56a

Each party properly attends to the daily physical, emotional, developmental, educational, and special needs of the Children.

**11.    The proximity of the residences of the parties.**

The parties' respective residences are approximately one and a half miles apart and are in the same school district.

**12.    Each party's availability to care for the child or ability to make appropriate child-care arrangements.**

Each party is available or, when unavailable, able to continue appropriate child care arrangements.

**13.    The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

Mother and Father have a high level of conflict. The parties will engage in co-parenting.

**14.    The history of drug or alcohol abuse of a party or member of a party's household.**

Father has had two prior convictions for driving under the influence.

57a

**15. The mental and physical condition of a party or member of a party's household.**

None was offered into evidence.

**16. Any other relevant factor.**

The Children are thriving and stable. The parties agreed upon the presently-governing Stipulated Custody Order upon Mother's return to Pennsylvania from Florida. Mother had sought both licensure as a registered nurse and employment in Florida. Upon her decision to leave Pennsylvania in 2016, she was able to enjoy the Children over the summer months with the Children then returning, by agreement of Mother and Father, to the primary physical custody of Father upon the commencement of that academic school year. Upon Mother's return, she again raised a dispute over custody of the Children, but Mother and Father ultimately agreed to the schedule which was made concrete by the Stipulated Custody Order of January 7, 2018. The Stipulated Custody Order is detailed and comprehensive, and its terms and structure have provided for the positive development of the Children.

## IV. CONCLUSION

Sections 5323(d) and 5328 require the trial court set forth the rationale of any custody decision—either in open court or in a written opinion or order—at or near the time it issues the same. 23 Pa. C.S.A. §§ 5323(d), 5328. When ordering

58a

any form of custody, the Act requires the Court to consider all of the best interest factors set forth above. 23 Pa. C.S.A. § 5328(a); S.W.D. v. S.A.R., 96 A.3d 396, 406, 2014 Pa. Super. 146 (Pa. Super. Ct. 2014). This Court, having had the opportunity to do so, has assessed the candor, demeanor, and credibility of each witness. *See* A.D. v. M.A.B., 989 A.2d 32, 35-36, 2010 Pa. Super. 15 ¶ 10 (Pa. Super. Ct. 2010) (*quoting* Collins v. Collins, 897 A.2d 466, 471 (Pa. Super. Ct. 2006)). In setting forth the rationale of the instant decision, the Court now weighs the testimony received, as summarized above, against those factors compelling a decision that is in the best interest of the Children.

The testimony of all witnesses establishes that both Mother and Father provide loving, stable, nurturing environments for the Children that foster positive development and maintenance of the Children's physical, intellectual, spiritual, and moral well-being. Both parents provide stable and safe physical and emotional environments for the Children. Both parents engage the Children in appropriate social and educational activities. The factual circumstances presented by the instant case, however, require the Court also to examine several jurisprudential doctrines impacting the traditional best interest analysis, including the primary caretaker doctrine and the doctrine of family unity.

Of consideration first is the non-controlling factor known as the primary caretaker doctrine. This doctrine examines the role that one parent has assumed as

the primary caretaker of the child; where two natural parents are both fit, the trial court must give positive consideration to the parent who has been the primary caretaker. M.J.M. v. M.L.G., 63 A.3d 331, 337, 2013 Pa. Super. 40 (Pa. Super. Ct. 2013) (*citing* Commonwealth *ex rel.* Jordan v. Jordan, 448 A.2d 1113, 1115, 302 Pa. Super. 421, 426 (Pa. Super. Ct. 1982)). In consideration of this doctrine, the Court must give attention to the benefits of continuity and stability in custody arrangements and to the possibility of harm arising from disruption of long-standing patterns of care from both the primary and secondary caretakers. Johns v. Cioci, 865 A.2d 931, 937, 2004 Pa. Super. 492 ¶ 19 (Pa. Super. Ct. 2004). Although Mother and Father here each adequately care for the Children, Father has assumed the role of primary caretaker for the Children for the past four years. The Children, according to both Mother and Father, are thriving physically, intellectually, spiritually, and morally under the current custody scheme in which Father has assumed the role of primary caretaker. The best interests of the Children require continuation of this stable, consistent, nurturing, and familiar arrangement.

Also of import in the instant matter and intertwined with this Court's instant review of long-standing patterns of care and the primary caretaker doctrine, is the doctrine of family unity—absent compelling reasons to separate siblings, they should be reared in the same household to permit the continuity and stability necessary for a young child's development. *Id.*, 865 A.2d at 942, 2004 Pa. Super. ¶

60a

44. This policy does not distinguish between half-siblings and siblings who share both biological parents. *Id.* This Court is mindful, instantly, that the policy against separation of siblings is only one factor—and not a controlling factor—in its ultimate custody decision. *Id.* In the majority of cases in which the family unity doctrine has been invoked, the children have been reared together prior to separation or divorce of the parents. *Id.*, 865 A.2d at 942-43, 2004 Pa. Super. ¶ 44. In cases where the siblings have not been reared in the same household, the force of the doctrine is less compelling. *Id.*, 865 A.2d at 943, 2004 Pa. Super. ¶ 44. The Children have been reared together prior and subsequent to the separation and divorce of the parents. Further, Children have a Half-Brother with whom they enjoy a wholesome and positive relationship while in the household of their primary caretaker—Father. The best interests of the Children require continuation of the current scheme which best promotes their development through environmental continuity and stability.

The Court, as always, also is mindful of the burden of proof. A party seeking modification of custody arrangements has the burden to show that such modification is in the best interest of the child. *Id.*, 865 A.2d at 937, 2004 Pa. Super. ¶ 19. It is axiomatic that the potential harm that may result from the disruption of established patterns of care and emotional bonds underscores the need for continuity, stability, and finality imparted to custody arrangements.

_Jackson v. Beck_, 858 A.2d 1250, 1252, 2004 Pa. Super. 357 ¶ 6 (Pa. Super. Ct. 2004). Here, Mother asserts her desire to see the children for one more night out of every fourteen-day custody cycle would be in the best interests of the Children, but fails to offer evidence as to how this alteration would be in their best interest and not merely in her own. Nothing offered into evidence by Mother or adduced by way of her cross-examination of Father or Newton justifies the proposed disruption of the existing continuity and stability the Children currently enjoy. A modification of custody is not warranted merely because one parent is unhappy with the existing arrangement; thus Mother, as the party requesting modification here, must have proven that the alteration of the existing arrangement—an arrangement to which she agreed by way of the January 7, 2018, Stipulated Custody Order—was to have been in the best interests of the Children. _Id._ Mother has failed to sustain her burden.

Upon consideration of all relevant factors and law, the best interests of A.C. and M.C. require the present Order remain in effect. Father shall retain primary physical custody of the Children. Mother shall continue to enjoy the agreed-upon periods of partial physical custody. The parties shall retain shared legal custody of the Children and the parties shall engage in co-parenting.

END OF OPINION

ORDER ATTACHED AS PAGES 20-21