J-S38001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RAJIV RAGHAVAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENDRA D. JOHNSON | : | |
| | : | |
| | : | No. 1737 EDA 2022 |
| APPEAL OF: USHA RAGHAVAN AND | : | |
| VIJAY RAGHAVAN | : | |

Appeal from the Order Entered June 14, 2022
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  0C1400289

BEFORE:  KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED JANUARY 27, 2023**

Usha Raghavan and Vijay Raghavan (collectively, "Paternal Grandparents") appeal from the order awarding Kendra Johnson ("Mother") sole legal and physical custody of D.J. ("Child"), born in February 2013.[1]  We affirm.

---

[1] The order did not award Child's father, Rajiv Raghavan ("Father"), any legal or physical custody.  Father did not file a separate appeal and is not a party to the instant appeal.

We summarize the relevant factual and procedural history as follows.[2] Mother and Father are the biological parents of Child. Father commenced the underlying custody action in March of 2014. The trial court issued an interim custody order in October 2014 awarding Mother primary physical and sole legal custody of Child. The court awarded Father supervised physical custody of Child on alternate Sundays. The trial court directed Paternal Grandparents, with whom Father resided in Westchester County, New York, to be present during Father's custodial times.[3] In November 2015, the trial court awarded Mother and Father shared legal custody. The court further awarded Mother primary physical custody and Father "supervised partial physical custody"[4] at Paternal Grandparents' home for approximately one week over the Thanksgiving and Christmas holidays and partial physical custody one week

_____

[2] The trial court aptly recounted the full factual and procedural history in its opinion pursuant to Pa.R.A.P. 1925(a). **See** Trial Court Opinion, 8/10/22, at 1-7.

[3] As discussed further below, the record indicates Father has a history of domestic violence as well as mental illness and substance abuse. **See**, **e.g.**, N.T., 6/14/22, at 6-7, 26-27, 100-01, 110-11, 117-22, 133-35; **id**. at 137, Ex. G-2.

[4] We observe that the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, does not provide for an award of "visitation" or "supervised partial physical custody." **See** 23 Pa.C.S.A. § 5323(a). Rather, the Act provides for "supervised physical custody," defined as, "[c]ustodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and the individual with those rights." 23 Pa.C.S.A. §§ 5322(a), 5323(a). As such, we consider the award to be supervised physical custody and refer to it as such herein.

every month. Mother and Father each petitioned to modify the custody order in 2017, and in January 2018, the trial court entered a temporary order awarding Mother sole legal and primary physical custody, and Father physical custody to be supervised by Paternal Grandparents.[5]

Relying on their involvement with Child as supervisors of Father's physical custody, Paternal Grandparents filed a petition to intervene in January 2018, and a complaint in October 2018, requesting shared legal and partial physical custody. Pursuant to an order entered December 19, 2018 addressing all outstanding petitions, the trial court awarded Mother sole legal and primary physical custody of Child. The court, having determined that Paternal Grandparents established standing at the time, awarded Father and Paternal Grandparents physical custody on the second Sunday of every other month under supervision by a neutral organization as agreed by the parties. Absent agreement, this supervised physical custody would take place at the court nursery. *See* Order, 12/19/18.[6]

On July 12, 2019, Paternal Grandparents filed the instant petition to modify the custody order in pursuit of partial physical custody. The trial court issued a series of temporary orders providing for virtual visitation and then expanding Paternal Grandparents' custody to monthly partial physical custody

---

[5] Mother has maintained sole legal custody since this time.

[6] No party filed an appeal from this order.

in the Philadelphia area with Father not to be present, in addition to monthly virtual visits. In the interim, Father filed a petition to modify the order seeking to be present during Paternal Grandparents' custodial time. *See* N.T., 6/14/22, at 7 (trial court noting Father's petition to modify). On June 14, 2022, the trial court conducted a hearing on Paternal Grandparents' and Father's petitions to modify the order. Both Mother and Paternal Grandparents were present and represented by counsel. Father declined to appear, and his attorney accordingly withdrew his petition. *See id*. at 6-7. Mother and Paternal Grandparents testified on their own behalf.

The record reveals the following: Father lives with Paternal Grandparents. *See* N.T., 6/14/22, at 26-28. Father is diagnosed with schizoaffective disorder, bipolar type, for which he had been treating with his current doctor on and off since 2009 and taking medication. *See id*. at 133-34; *see also id*. at 137, Ex. G-2. Mother testified that Father's relationship with Paternal Grandparents contains elements of violence. *See id*. at 100, 110. She explained, "There's a lot of aggression. There's a lot of trying to control each other, threatening each other, throwing things at each other. They do become violent." *Id*. at 100. Mother further testified that Father "will throw things through the walls or punch at the walls, and there was damage to the home when I was there, from him throwing things at his mother." *Id*. at 110. Paternal Grandfather confirmed that Father "has some issues . . . from time to time," that he "sometimes can raise his voice," and

- 4 -

further conceded that conflicts occurred between Father and Paternal Grandparents. *Id*. at 26-27. Paternal Grandmother likewise confirmed conflicts with Father. *See id*. at 60-61. Paternal Grandmother admitted that she sought custody, in part, to further Father's relationship with Child. *See id*. at 56, 80. The record also reveals that Mother obtained a final protection from abuse ("PFA") order against Father, a resident of Paternal Grandparents' home, in May 2017 for a period of two years. That order was then extended for a period of three years and expired in May 2022. *See* PFA Orders, No. 1607V7000, 5/18/17 and 7/9/19.

Mother further testified that she opposes Paternal Grandparents' petition because they have not "built [a supportive] relationship with [Child, and t]hey've never built that relationship with me. They've done nothing but harass and cause problems and make life more difficult for us." N.T., 6/14/22, at 113. Mother explained that Paternal Grandparents will send up to ten Zoom invitations per day from various e-mail addresses to set up a virtual meeting with Child, which impacts Mother's ability to determine which meeting invites to accept and attend. *See id*. at 114-15. Additionally, Mother described a visit, during which Paternal Grandparents were to, by agreement, take Child to an aquarium in New Jersey, but they instead took Child past the aquarium toward New York, which caused Child to text Mother that she (Child) was afraid of being taken to New York. *See id*. at 102-03. That day, Mother attempted to calm Child, though she (Mother) felt "terrible," and as if she

- 5 -

"can't keep [Child] safe." *Id*. at 104. Mother further stated that Child sometimes returns from visits with Paternal Grandparents "very, very hungry," and complaining that she "is never fed lunch during these extended visits." *Id*. at 107.

During the hearing, and in the presence of the parties' counsel, the trial court interviewed Child *in camera*. *See id*. at 140. The court then summarized the interview, as well as its findings from that interview, on the record at the hearing. The court explained that it found Child mature and well-reasoned. *Id*. at 166. The court stated that Child explained that she does not want to see Paternal Grandparents and she is afraid they will take her back to New York without Mother knowing. *See id*. at 142, 143. The court noted that Child does not enjoy phone calls with Paternal Grandparents because there is a lot of yelling, and sometimes Father will participate on the calls. The court explained, "there's a lot of yelling. [Father's] yelling at [Paternal Grandparents, they yell back at him, and all he wants to talk about is [Mother]. Sometimes [Child will] yell at them to stop, and sometimes she'll hang up." *Id*. at 144. However, Child "likes going to brunch with her grandparents." *Id*.

At the conclusion of the hearing, the trial court awarded Mother sole legal and physical custody of Child.[7] The court permitted Paternal Grandparents to visit with Child "as they and Mother may arrange and agree." *See id*. at 171-71; *see also* Order, 6/14/22. Paternal Grandparents timely appealed, and both the trial court and Paternal Grandparents complied with Pa.R.A.P. 1925.

Paternal Grandparents raise the following issue for our review:

> Did the [t]rial [c]ourt err and/or abuse its discretion by awarding [Mother] sole legal custody and sole physical custody of [Child], and by only allowing visitation by [Paternal Grandparents], as [Mother] may arrange and agree?

Paternal Grandparents' Brief at 5.[8]

_____

[7] The trial court addressed on the record the best interest factors pursuant to section 5328(a). **See** N.T., 6/14/22, at 165-69. While finding that section 5328(a)(1) favored Paternal Grandparents, the court found section 5328(a)(2), (4), (7), (9), (10), (12), and (15) favored Mother. The court found all other section 5328(a) best interest factors to be either neutral or inapplicable.

[8] To the extent Paternal Grandparents challenge Mother's legal custody, this issue is waived for failure to raise it before the trial court. Paternal Grandparents did not raise legal custody in their petition to modify, nor did they raise legal custody at the June 14, 2022 hearing. **See** Petition to Modify, 7/12/19, at ¶ 7 (stating, "Petitioners believe it is in the best interest of the child to modify the current custody order granting Paternal Grandparents partial **physical** custody") (emphasis added); **see also** N.T., 6/14/22, at 154-55 (Paternal Grandparents' counsel stating that Paternal Grandparents are seeking increased physical custody); **accord** Trial Court Opinion, 8/10/22, at 14 (concluding that "[t]his issue is waived as it was not presented to the trial court. At no stage in the proceedings did Paternal Grandparents ever seek legal custody of D.J. At issue . . . was whether Paternal Grandparents should be granted partial physical custody"). Accordingly, they have waived this
*(Footnote Continued Next Page)*

Our standard and scope of review for custody actions is as follows:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Wilson v. Smyers*, 284 A.3d 509, 515 (Pa. Super. 2022) (internal citation and quotations omitted); *see also M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (noting that an abuse of discretion is not merely an error of judgment; rather, if the court's judgment is manifestly unreasonable as shown by the evidence of record, it has abused its discretion). Further, a trial court's discretion in custody matters "should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned." *Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (internal citation and quotation omitted).

---

issue for our review. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *see also Interest of T.M.*, 239 A.3d 193, 201 (Pa. Super. 2020) (emphasizing the necessity of raising claims at the earliest opportunity).

The Act provides that grandparents may seek partial physical custody. *See*, *e.g.*, 23 Pa.C.S.A. § 5325.[9] "[T]he burden is on the grandparents 'to demonstrate that partial custody or visitation in their favor is in the child's best interest and will not interfere with the parent-child relationship." *D.R.L. v. K.L.C.*, 216 A.3d 276, 279 (Pa. Super. 2019) (internal citation and quotation omitted). The "paramount concern in custody cases, including those in which grandparents are seeking rights, is the best interest[] of the child. A determination of the best interest[] of the child is based on consideration of all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *Id*. (internal citations and quotation marks omitted).

Section 5328 sets forth the factors that the trial court must consider in awarding custody. *See* 23 Pa.C.S.A. § 5328(a); *see also Wilson*, 284 A.3d at 516 n.5 (noting that section 5328 also applies to modifications of custody awards). With regard to the best interest factors pursuant to section 5328(a), we have stated that the trial court is required to consider all such factors. *See J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011). While the court must give "weighted consideration to those factors which affect the safety of the child" pursuant to section 5328(a), we have acknowledged that the amount of

---

[9] Section 5325 grants grandparents standing to petition for partial physical custody or supervised physical custody in certain circumstances. As discussed further below, standing is presently not at issue.

- 9 -

weight a court gives any one factor is almost entirely discretionary: "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013).

Section 5328(c), which requires consideration of additional factors when grandparents are parties, provides in relevant part:

> (1) In ordering partial physical custody or supervised physical custody to a party who has standing under section 5325(1) or (2) (relating to standing for partial physical custody and supervised physical custody), the court shall consider the following:
>
>> (i) the amount of personal contact between the child and the party prior to the filing of the action;
>>
>> (ii) whether the award interferes with any parent-child relationship; and
>>
>> (iii) whether the award is in the best interest of the child.

23 Pa.C.S.A. § 5328(c)(1)(i)-(iii).

All sixteen best interest factors set forth in section 5328(a), as well as the three statutory custody factors pertaining to grandparents listed in section 5328(c)(1), are required to be considered by the trial court when grandparents seek custody rights. *See D.R.L.*, 216 A.3d at 280. However, there is no required amount of detail for the trial court's explanation; all that is required is that the court consider the enumerated factors and base its decision thereon. *See id*. Lastly, while our Supreme Court has observed the state's interest in protecting beneficial grandparent-child relationships, the

Court also recognized it "cannot conclude that such a benefit always accrues in cases where grandparents force their way into grandchildren's lives through the courts, contrary to the decision of a fit parent." **See Hiller v. Fausey**, 904 A.2d 875, 886 (Pa. 2006).

In challenging the trial court's award of custody, Paternal Grandparents argue that the trial court abused its discretion in its consideration of section 5328(a)(4), (5), (7), (8), and (13). Paternal Grandparents' Brief at 10-12. Paternal Grandparents' argument across these factors hinges on the same concern, namely that the trial court's custody order, which provides Mother the ultimate discretion with respect to visitation, will allow Mother to isolate Child from them and result in the termination of Child's beneficial relationship with them and the paternal family. **Id**.

At the conclusion of the hearing on Paternal Grandparents' petition to modify, the trial court explained that, while the first factor under section 5328(a) favors Paternal Grandparents because they are the parties more likely to permit contact between Child and the other party, factors two, four, seven, nine, ten, twelve, and fifteen favor Mother. **See** N.T., 6/14/22, at 165-69. The court concluded the remaining factors are neutral or do not apply.[10] **Id**.

---

[10] The court also reviewed the additional factors relevant to grandparents pursuant to section 5328(c). **See** N.T., 6/14/22, at 169-70. However, Paternal Grandparents raise no arguments relating to section 5328(c).

Consistent with its determination on the record at the custody hearing, in its

Rule 1925(a) opinion, the court summed up its reasoning as follows:

> Dissatisfied with their coming to Philadelphia to see [Child], Paternal Grandparents want [Child] to travel to their home one weekend a month during the school year and one week a month during the summer. The [c]ourt determined that this situation would be contrary to [Child]'s best interests given [Child]'s opposition to being in Paternal Grandparents' frequent presence whether in Philadelphia or New York, the danger posed by Father's living in Paternal Grandparents' household and his being there during [Child]'s proposed visits, and the excessive travel for [Child]. The situation has devolved to one in which Paternal Grandparents are attempting to force their way into [Child]'s life through this court, contrary to the wishes of Mother who is a fit parent. Paternal Grandparents do not provide support to further [Child]'s emotional well-being. Further, by requesting visits with [Child] in their and Father's home, Paternal Grandparents may be construed as acting as proxies for Father who has no custodial rights at all.
>
> Since Paternal Grandparents no longer wish to come to Philadelphia and since it is not in [Child]'s best interest to go to their home in New York, the [c]ourt properly determined that Mother should have sole physical custody and that Paternal Grandparents can visit with [Child] as they and Mother agree. The continued litigation is putting a great strain on [Child]'s emotional and mental wellbeing. Throughout this litigation, Paternal Grandparents have put their own convenience and interest above that of [Child]. As this [c]ourt is mandated by statute and decisional law to consider the best interest[s] of [Child] first and foremost, it determined that Mother proved . . . that she is entitled to sole physical custody of [Child].

Trial Court Opinion, 8/10/22, at 19.[11]

_____

[11] Pennsylvania Rule of Civil Procedure 1915.5(a)(4) provides that "[i]n a third-party plaintiff custody action in which standing has not been resolved by preliminary objection, the court **shall** address the third-party plaintiff's standing and include its standing decision in a written opinion or order."
*(Footnote Continued Next Page)*

Following our review, we discern no abuse of discretion by the trial court. The trial court concluded that Paternal Grandparents' involvement, and personal contact with Child, stemmed largely from their role as supervisors during Father's custodial periods. The trial court heard evidence that Father—who had no physical or legal custody at the time and who lives in Paternal Grandparents' home—had a history of violence and mental illness and that Paternal Grandparents sought custody in part to facilitate Father's relationship with Child. *See* N.T., 6/14/22, at 6-7, 26-27, 100-01, 110-11, 117-22, 133-

_____

Pa.R.C.P. 1915.5(a)(4) (emphasis added). Rule 1915.5(a)(3) more generally provides that "[t]he court may raise standing *sua sponte*." Pa.R.Civ.P. 1915.5(a)(3). We encourage trial courts to address standing, generally, and especially in cases where third-parties petition for custody.

That said, the trial court declined to engage in a standing analysis in its order deciding this action, but instead *sua sponte* addressed Paternal Grandparents' standing in its Rule 1925(a) opinion. While the court's standing analysis was well-reasoned, it occurred after Paternal Grandparents filed their notice of appeal, thereby divesting that court of jurisdiction. Therefore, it was improper for the trial court to address standing after the fact. *See* Pa.R.A.P. 1701(a) (providing that, "[e]xcept as otherwise prescribed by these rules, after an appeal is taken . . . the trial court or other government unit may no longer proceed further in the matter").

We further note that, while Mother unsuccessfully opposed Paternal Grandparents' standing in 2018, she failed thereafter to move for dismissal based on Paternal Grandparents' lack of standing, or renew her objection to Paternal Grandparents' standing, prior to, or at the 2022 hearing. As noted above, the trial court's order, presently before this Court, did not address standing; and this Court may not address standing *sua sponte*. ***See In re Adoption of Z.S.H.G.***, 34 A.3d 1283, 1288-89 (Pa. Super. 2011) (clarifying that standing is not intertwined with subject matter jurisdiction and therefore, this Court may not raise standing *sua sponte*). We accordingly decline to review this issue.

35; *see also id*. at 137, Ex. G-2; Protection From Abuse Orders, No. 1607V7000, 5/18/17 and 7/9/19. The court further found that the prior award of custody to Paternal Grandparents, and "constant court involvement," was causing Mother and Child emotional turmoil, thereby detrimentally affecting their relationship. Moreover, the court interviewed Child, *in camera*, in the presence of the parties' counsel. **See** N.T., 6/14/22, at 140 (trial court synopsizing Child's position). The court found Child mature and well-reasoned. **See id**. at 166. Child opposed spending more time with Paternal Grandparents. **See id**. at 142-44. Accordingly, we find no abuse of discretion in the trial court's determination that Paternal Grandparents failed to meet their burden of showing that an award to them of partial physical custody of Child served Child's best interest, and, instead that awarding Mother sole legal and physical custody of Child was in Child's best interest. **See Hiller**, 904 A.2d at 886 (noting that, while child-grandparent relationships may be beneficial, that benefit does not always accrue "where grandparents force their way into grandchildren's lives through the courts, contrary to the decision of a fit parent").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/27/2023